HOWELL STRONG et al.

v.

MONROE N. LORD et al.

*Filed at Ottawa June 16, 1883.*

107    25
24a 321
107    25
141   661
107    25
153    61
153   304
107    25
57a 322
107    25
86a 629

1. RESCISSION OF CONTRACT—*for fraud.* Where one of several joint owners of real estate, the legal title being in another of the owners, offered his services to negotiate the purchase of the same from the holder of the legal title for a purchaser who was ignorant of certain facts which were not disclosed, and which would operate to impair the title, and such joint owner procured the purchase, which was accepted in ignorance of the facts, it was *held*, that these facts constituted constructive fraud on the part of the person negotiating the purchase, and entitled the purchaser to rescind the contract, if he had not put it out of his power to restore the whole interest he had thus been induced to purchase.

2. SAME—*placing the other party in statu quo.* A party who would rescind a contract for fraud, must restore the other party to the condition in which he stood before the contract was made. So where the purchaser of land sells an interest therein, and receives full payment, and his vendee dies leaving an infant heir entitled to a deed, he can not rescind his own purchase, for the reason that he can not restore the land in whole to his vendor.

3. SAME—*power to decree the restoration of the infant's interest, in such case.* The inability of the parties in such case to make conveyance of the infant's interest, so that upon the rescission of the original contract of sale the entire property might be restored, can not be aided by a decree of court directing such conveyance, for the want of authority to do so, at least where there is no application on behalf of the infant.

4. DESCENTS—*equitable title.* Where a purchaser of land, under a written contract, makes full payment of the purchase money, so as to be entitled to a deed from the vendor, he will have an equitable title, which on his death will vest in his heirs.

5. SAME—*in case of partnership in land—rights of surviving partners.* The doctrine of survivorship, in respect to estates in partnership in real property, is limited, it seems, to the extent to which equity stamps the character of personalty upon such estates, and that is, so far as, and no further than, they are required to pay partnership debts; so that whatever remains of such partnership real estate after the debts of the company shall have been discharged, is held in common, at once subject to dower or curtesy, and goes to the heirs or devisees accordingly.

6. So where several persons were joint equitable owners of land, in respect of which there was no indebtedness, either from the owners to others, or as among themselves, it was *held,* even conceding a partnership existed, upon the death of one of the owners his interest descended to his heirs, and the surviving partners had no power of disposition as to that part.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. E. A. CRANE, for the plaintiffs in error:

Where fraud is charged and proved, the burden of proof is on the defendants to first purge themselves of the fraud, and they are estopped from using the result of their own wrong as a defence for their unlawful acts, until they first make some showing of fairness on their part. *Seeley* v. *Price,* 14

Mich. 541; *Jacox* v. *Jacox,* 40 id. 573; *Wartemburg* v. *Spiegel,* 31 id. 400; *Duncomb* v. *Richards,* 46 id. 169.

We are not bound, under these circumstances, to put these defendants *in statu quo.* *Downer* v. *Smith,* 32 Vt. 7; *McCrillis* v. *Carlton,* 37 id. 139; *Concord Bank* v. *Gregg,* 14 N. H. 338; *Holbrook* v. *Burt,* 22 Pick. 554; *Coffee* v. *Ruffin,* 4 Caldwell, (Tenn.) 516; *Gilbert* v. *Hoffman,* 2 Watts, (Pa.) 66; *Allin* v. *Willison,* 72 Ill. 291; *Van Dyke* v. *Walton,* 88 id. 444; *Upham* v. *Dickinson,* 38 Mich. 338; *Reed* v. *Peterson,* 91 Ill. 288; *Hopkins* v. *Snedeker,* 71 id. 449.

We can put them *in statu quo* with the aid of the court. It is well settled that where fraud is charged a tender is not necessary before filing a bill, but defendants may be put *in statu quo,* or as nearly so as they can be by the decree, which may order it done in a certain way and time. *Corbus* v. *Teed,* 69 Ill. 206; *Fitzhue* v. *Smith,* 66 id. 487; *Board of Supervisors* v. *Henneberry,* 41 id. 179; *Webster* v. *French,* 11 id. 254.

The statute (chap. 22, sec. 44,) provides how the court may transfer the interest of a minor, and such has been done. *Enos* v. *Capps,* 12 Ill. 256; *Burger* v. *Potter,* 32 id. 66; *Greenebaum* v. *Austrian,* 70 id. 591; *Saff* v. *Phelps,* 92 id. 589.

The action of plaintiffs in error does not necessarily depend on whether the agents of defendants in error stated what was not true. *Coffee* v. *Ruffin,* 4 Coldwell, (Tenn.) 516; *Eldridge* v. *Walker,* 60 Ill. 230; *Case* v. *Ayers,* 65 id. 142; *Whitney* v. *Roberts,* 22 id. 381; *Mathews* v. *Hamilton,* 23 id. 470.

They can not be both buyer and seller at the same time. (*Tewksbury* v. *Spruance,* 75 Ill. 187.) Courts will not sanction such a course, nor sanction shifts to avoid it, (*Pensonneau* v. *Bleakley,* 14 Ill. 15,) or sell his own property as property of another. *Ely* v. *Hanford,* 65 Ill. 267.

Lord became agent of plaintiffs in error by his own voluntary acts, and no words are necessary to create that relation.

*Casey* v. *Casey,* 14 Ill. 112; *Dennis* v. *McCagg,* 32 id. 492; *Hughes* v. *Washington,* 72 id. 84; *Cotton* v. *Holliday,* 59 id. 176.

It makes no difference whether the property purchased was worth more or less than plaintiffs in error paid for it,— whether the market has gone up or down. *Pensonneau* v. *Bleakley,* 14 Ill. 15.

Mr. GEORGE C. CHRISTIAN, for the defendant in error Lord:

Before a party can rescind a contract for any reason, he must be in a position to restore to the other party that which he received from him. *Cunningham* v. *Fithian,* 2 Gilm. 650; *Buchenau* v. *Horney,* 12 Ill. 336; *Jennings* v. *Gage,* 13 id. 610; *Edmunds* v. *Myers,* 16 id. 207; *Murphy* v. *Lockwood,* 21 id. 611; *Brown* v. *Schuler,* 41 id. 196; *Smith* v. *Doty,* 24 id. 163; *Smith* v. *Brittenham,* 98 id. 197; *Wolf* v. *Dietzsch,* 75 id. 205; Benjamin on Sales, sec. 452.

The identical property must be restored, and the restoration must be full and complete. *Brown* v. *Schuler,* 41 Ill. 196; *Smith* v. *Doty,* 24 id. 163; *Buchenau* v. *Horney,* 12 id. 336; *Jennings* v. *Gage,* 13 id. 610; *Smith* v. *Brittenham,* 98 id. 197; *Wolf* v. *Dietzsch,* 75 id. 205.

It must be unincumbered, and in good condition. *Cunningham* v. *Fithian,* 2 Gilm. 650.

The rescission and offer to restore must have been at the first practicable moment. *Hall* v. *Fullerton,* 69 Ill. 448; *McCarthy* v. *Marleth,* 80 id. 526.

The interest of Charles Roe, on his death, descended to his heirs. *Buck* v. *Eaman,* 18 Ill. 529; *Smith* v. *Smith,* 55 id. 204; *Smith* v. *McConnell,* 17 id. 135; *Phelps* v. *Funkhouser,* 39 id. 401; *Walbridge* v. *Day,* 31 id. 379.

Mr. GEORGE F. BLANKE, for the defendant in error Bolton.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

Howell Strong and Robert M. Roe brought their bill of complaint in the Superior Court of Cook county, against Monroe N. Lord and others, to rescind a certain contract of purchase of real estate in Cook county, made by Strong. The land in question was, on October 1, 1872, conveyed to Strong by the deed of Silas C. Stevens, with whom defendants Lord and Bolton, and one Flack, were joint equitable owners, for the consideration of $2750, and the bill alleges that complainant Robert M. Roe, and one Charles Roe, were jointly interested with Strong as partners in the purchase. The transaction is sought to be avoided on the ground that complainants were induced to purchase through fraud, practiced by defendant Lord. Answers and replications were filed, and the cause heard upon the testimony offered by the complainants. When the complainants had rested their case, counsel for defendant Lord moved the court to dismiss the bill upon the evidence presented by complainants, because they could not place the defendants *in statu quo*, and so were not entitled to have the contract rescinded, and, after argument, a decree was entered dismissing the bill. The decree was affirmed by the Appellate Court for the First District, and writ of error sued out from this court.

The evidence adduced by complainants before the Superior Court tends to show that Lord was part owner with Bolton, Stevens and Flack, of the land sold and conveyed by Stevens to Strong; that Strong was ignorant of, and Lord did not disclose, this fact to Strong, and offered his services to negotiate the purchase from Stevens, which were accepted by Strong, and Lord did negotiate the purchase for Strong from Stevens. These circumstances, uncontradicted, were sufficient to constitute constructive fraud on the part of Lord, and would entitle Strong to rescind the purchase from Stevens, if Strong were in the situation to reconvey to Stevens the

title which he received from the latter. There can be no dispute as to the general rule that the party who would rescind a contract on the ground of fraud must restore the other party to the condition in which he stood before the contract was made. We shall, then, confine ourselves, in the present case, to the inquiry whether the plaintiffs in error are able to place the defendants *in statu quo.*

The proof discloses that Strong, after his purchase from Stevens, and in December, 1872, entered into a written contract with Robert M. Roe and Charles Roe for the sale and conveyance to them, each, of an undivided one-fourth of the land in question, upon their making payment of the purchase money named; that the said Roes afterward made payment in full of the purchase money, and that in 1876 said Charles Roe died intestate, leaving him surviving Mary Roe, his widow, and Alice, Alma and Elsie Roe, his children and heirs at law. The latter child, Elsie, is an infant. Charles Roe, then, having made full payment for, and being entitled to, a deed from Strong, under the written contract of the latter, of one-fourth of the land, became the owner in equity of such one-fourth, and he dying intestate, the equitable title to one-fourth of the land descended to his heirs. (*Smith* v. *Smith,* 55 Ill. 205.) Elsie Roe, one of those heirs, is an infant, and can not therefore make a valid conveyance of his interest. It is apparent, therefore, that plaintiffs are not in the condition that they are able to restore to Stevens, or the parties interested with him in the land, the title to the premises as Strong received it.

It is contended by plaintiffs' counsel that the contract of sale and conveyance between Strong and the two Roes constituted a partnership between them; that the land to be conveyed by Strong to the Roes was partnership property, and that on the death of Charles Roe the title vested in plaintiffs as his survivors, and they offer to execute any conveyance of the land the court may direct. The theory

of a partnership is based upon the following clauses in the contract:

"It is agreed, in case of a sale of any of the lands, the second party shall receive one-fourth of the proceeds. In case the lands do not sell for as much, including taxes, costs, etc., as the first party originally paid said Stevens, then the second party shall bear one-fourth of the loss,—the intent of this instrument being to create a co-partnership in the sale of said lands, the party of the first part to have a three-fourths and the party of the second part a one-fourth interest in the profits, and to share in the same proportion the losses,—in case of a sale, the second party to release his interest in the part sold."

The contract is between Strong, of the first part, and Robert M. Roe in one and Charles Roe in the other contract, of the second part,—there being a separate contract of the same tenor with each of the Roes. The language of the preceding part of the contract is, "the first party, for $687.50, to be paid as hereinafter set forth, agrees to sell the second party an undivided one-fourth" of the land in question. Then follow the terms of payment, and afterward this: "The first party agrees, if above conditions are fulfilled, to deed the second party an undivided one-fourth of the land." Robert and Charles Roe both having made all the required payments under the contract, they were by its terms each entitled to a deed of an undivided fourth of the land, and it might well be disputed whether there was the existence of any partnership after the making of such payment. But conceding the existence of a partnership, as claimed, we can not recognize the right in the survivors, Strong and Robert M. Roe, after the death of Charles Roe, to sell the interest which the latter had in the land at the time of his death. Mr. Washburn, in his work on Real Property, (vol. 1, p. 422,) speaking of estates in partnership in real property, says: "In this country,—and it seems generally in England,—the doctrine

of survivorship is limited by the extent to which equity stamps the character of personalty upon such estates, and that is, so far as, and no further than, they are required to pay partnership debts." And further, on page 423: "And, as would naturally be inferred from the premises above stated, whatever remains of such partnership real estate after the debts of the company shall have been discharged, is held in common, at once subject to dower or curtesy, and goes to the heirs or devisees accordingly." All the payments on Strong's purchase of the real estate in question had been made, and Strong had received from the Roes all payments due him under the contracts with them. There were no debts owing in respect to this matter. The supposed partnership was fully wound up, and there was nothing left for the survivors to do, and consequently the equitable title of Charles Roe in the land descended to his heirs.

It is suggested that although there may be inability in the parties to make conveyance of the infant's interest, it may be conveyed for and on behalf of the infant, under decree of the court to that effect. We know of no warrant of authority for the exercise of such a power on the part of a court,—at least where there was no application on behalf of the infant.

We see nothing in the circumstances of the case which should take it out of the general rule of the necessity, in order to rescind a contract for fraud, of restoring the other party to the condition in which he stood before the contract was made, and that being impossible here, the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*