.Charles W. Rigdon

*v.*

Alfred F. Walcott.

*Filed at Ottawa May 12, 1892.*

1. Contract induced by fraud—*voidable—in full force until acts of rescission.* A contract into which one has been induced to enter by the fraud of another is not void, but is only voidable at the election of the defrauded party. Until he has elected to rescind, and has performed such acts on his part as are necessary to work a rescission, the contract remains in full force, and he is entitled to no remedy which is not based on the theory of its continued validity.

2. Same—*offer to place in statu quo—precedent to right to rescind.* It is a general rule, to which there are but few exceptions, that the restoration of the party against whom the relief is sought, or the offer to restore him to the position which he occupied before the transaction complained of took place, is a condition precedent to the right to rescind. The right can be exercised only upon the terms of returning the consideration received, or, perhaps, under certain circumstances, of returning its value.

3. Same—*inability of party defrauded will not excuse tender of restoration before rescission.* The fact that the party to a contract who has been defrauded has disposed, in whole or in part, of what he has received before having become aware of the fraud practiced on him, or his inability, by reason of his financial situation or want of means, to raise the amount of the consideration received, for the purpose of making a tender, after having spent it, will not exempt him from the operation of the rule requiring such tender, in order to a rescission.

4. Same—*offer to set off demands is not such an offer of restoration as to sustain a rescission.* A party seeking by bill in chancery to set aside a sale or surrender of a contract held by him will not be excused from tendering back the consideration received by him, by an offer, in an amended bill, to set off such demand as he may have against the sum paid him for the transfer of the contract, when the facts alleged do not show that the defendant can be placed *in statu quo* by the final decree.

Appeal from the Appellate Court for the First · District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Kirk Hawes, Judge, presiding.

This was a bill in chancery, brought by Charles W. Rigdon against Alfred F. Walcott, to obtain a rescission and cancellation of an agreement, by which the complainant had assigned and relinquished to the defendant, a certain contract theretofore existing between said parties, and for an accounting, and an adjustment between them of the matters embraced in said contract. A demurrer to said bill having been sustained, and the complainant having elected to abide by his bill, a decree was entered dismissing said bill at the complainant's costs for want of equity. On appeal by the complainant to the Appellate Court, said decree was affirmed, and the present appeal is from said judgment of affirmance.

Said bill alleges, in substance, that on or about February 28, 1888, the complainant and defendant entered into a certain contract of which the following is a copy:

"This agreement, made this 28th day of February, A. D. 1888, between Alfred F. Walcott, of New York, in the county and State of New York, party of the first part, and Charles W. Rigdon, of Chicago, in the county of Cook and State of Illinois, party of the second part, witnesseth:

"Whereas, a corporation has been organized under the laws of the State of Illinois, known as the Chicago and South Side Rapid Transit Railroad Company, the shares of capital stock of said company being in number 75,000, and of the par value of $100 each, of which stock has been duly subscribed as follows: 74,995 shares by said Alfred F. Walcott, party of the first part, one share by John H. Glade, one share by Will H. Clark, one share by Charles S. Babcock, one share by August Von Glahn, and one share by Charles W. Rigdon, party of the second part; and whereas, it is the purpose and intention of the said party of the first part to obtain and procure from said railroad company, if he is able so to do, a contract for the construction of its railroad, (provided an ordinance is passed by the city council of the city of Chicago authorizing the construction of said railroad,) by the terms of which contract, in

consideration of the building and construction of said railroad by said party of the first part, it is intended that said company shall covenant and agree to pay to him in installments, as the work progresses, in the bonds of said company, the sum of $7,000,000, and receipt to him in full all of the capital stock by him subscribed, and issue the same to him fully paid and non-assessable; and whereas, the said party of the second part has heretofore contributed his services to the party of the first part in and about the organization of said company; and whereas, the party of the first part is desirous of securing the services of the said party of the second part, for the benefit of said company, in and about the procurement of the right of way of said railroad, and in and about the construction of the same:

"Now, therefore, in consideration of the premises, and of the sum of one dollar to him in hand paid, the receipt whereof is hereby confessed, and in further consideration of the covenants and agreements of the said party of the second part, hereinafter mentioned, the said party of the first part hereby covenants and agrees that he will procure from said railroad company a contract for the construction of said railroad, substantially as above set forth, and that he will, out of the bonds and stock payable to him, under and by virtue of the terms of said contract, assign, transfer and set over to said party of the second part the one-fifteenth part of all such capital stock fully paid up and the one-thirtieth part of all bonds so to be issued by said company, the said stock and bonds to be delivered to said Rigdon in the manner and at the time following, to-wit, to Owen F. Aldis, as trustee; to be held by him until the completion of said railroad, and then to be delivered by him to said Rigdon,—said bonds and stock to be delivered to said Aldis, as trustee, as aforesaid, at the time or times when the same are deliverable to the said party of the first part under and by virtue of the terms of his agreement with said railroad company: *Provided, however*, that in

case said party of the first part shall desire to make sale of the bonds and stock, which otherwise would be deliverable, under the terms hereof, to said party of the second part, or to said Aldis as trustee, who shall have the right to dispose of the same for such price or prices as in his judgment are the best obtainable, said bonds, however, not to be sold or disposed of, without the consent of the said party of the second part, at less than ninety-five (95 cts.) cents net on the dollar, and said stock at not less than seventy-five (75 cts.) cents net on the dollar ; and in case said party of the first part so elects to sell and dispose of such bonds and stock, or either of them, he shall, in lieu of the bonds and stock so to be delivered to the said party of the second part, pay over directly to him the aforesaid proceeds of such bonds and stock.

"And, in consideration of the said covenants and agreements of the said party of the first part, the said party of the second part hereby covenants and agrees, until the completion of the said railroad under the aforesaid contract, to devote all the time, attention, skill and ability necessary to the procurement of the necessary ordinances from the city of Chicago and to the procurement of the right of way for said railroad, and in addition thereto shall render all the assistance in his power to said party of the first part in and about the work of constructing said railroad under said contract.

"It is understood and agreed between the parties hereto, that the said first party shall not permit other persons having an interest in the profits of said contracts, by way of stock and bonds, or either, to sell or dispose of the same except upon the condition that said Aldis, as trustee as aforesaid, be allowed to deliver to said Rigdon a *pro rata* amount of the stock and bonds held by him, the intention being that said first party, in raising money by sale of stock and bonds, shall not be embarrassed, during the construction of said road, by the sale of stock or bonds by those parties, or any of them,

holding stock or bonds as part of the profits arising from said contract of construction.

"In witness whereof, the said parties have hereunto set their hands and seals this 28th day of February, A. D. 1888.

ALFRED F. WALCOTT,

CHARLES W. RIGDON."

The bill further alleges, that the complainant fulfilled his part of said contract and faithfully performed each and every act which he was thereby required to do and perform; that in November, 1889, the defendant represented to the complainant that the Chicago and South Side Rapid Transit Company was unable to further carry on to completion the work undertaken by it, and that it became necessary, in order that the promoters and subscribers to the capital stock of said company might reap any benefit from such work as had already been done in and about the organization and establishment of said company, for such promoters and subscribers to sell a controlling interest in said company to certain persons largely interested in and representing the Chicago City Railway Company, and that the utmost the complainant could obtain for his interest in the stock and bonds of said Rapid Transit Company acquired by him under and by virtue of the contract above set forth, and by virtue of the performance by him of his obligations thereunder, was the sum of $40,000; that the defendant further represented to the complainant that each and every other person having any interest in said company's stock or bonds had consented to receive a sum which bore a far less proportion to the par value of the stock and bonds of said company to which they were respectively entitled, than did said sum of $40,000 bear to the par value of the stock and bonds of said company to which the complainant had become entitled by reason of said contract and the performance of his obligations thereunder; that the defendant afterwards, by his authorized agent and attorney, repeated to the complainant each and every of said representations, until the

complainant, believing them to be true, endorsed on said contract an assignment thereof in blank, and deposited the same with said attorney, and received from him a memorandum, as follows:

"Received of Charles W. Rigdon, contract between him and Alfred F. Walcott, dated February 28, A. D. 1888, assigned in blank by said Rigdon, to be held by me, and disposed of in the following manner, viz.: Within ninety days from this date I shall either return said contract to said Rigdon unimpaired, or I shall pay over to said Rigdon the sum of $40,000 cash, and deliver to him his note of $800 heretofore given by him to Alfred F. Walcott, or, in lieu of said note, the amount thereof in cash. If I shall pay said $40,000 cash to said Rigdon within said time, and shall turn over to him said note of $800, or, in lieu thereof, the amount of said note in cash, then I shall have the right to fill out said assignment of said contract to Alfred F. Walcott, and surrender said contract to him.

"Witness my hand this 6th day of December, A. D. 1889.

W. W. Gurley."

The bill further alleges that, afterward, on the 24th day of December, 1889, the complainant, fearful that said representations, made by said defendant in person and through said attorney, were false, exhibited his bill in the Superior Court of Cook county, for an injunction restraining said attorney from disposing of or assigning said contract; that immediately upon the filing of said bill and the issuing of an injunction, the defendant, through said attorney, and through many other persons thereto by the defendant incited, renewed each and every of said representations, and persuaded the complainant that they were all true, and prevailed upon him to abandon his said bill and receive said sum of $40,000, and permit said contract to be surrendered up to the defendant; that after said contract had been so delivered up, the defendant, in accordance with a plan matured and terms privately

agreed upon between him and the purchasers of said stock and bonds before said representations were made to the complainant, disposed of and sold, in consideration of certain cash, stock, bonds and other property, of the value of many hundred thousand dollars, to certain persons interested in and representing the Chicago City Railway Company, a controlling interest in said Chicago and South Side Rapid Transit Railroad Company, at a price which, as the complainant is informed and believes, would have entitled the complainant to receive not less than $500,000, had he not before that time, by reason of said false and fraudulent representations made to him by the defendant and his duly authorized agents, disposed of the interest in the capital stock and bonds of said Rapid Transit Railroad Company which he had under and by virtue of said contract; that the complainant has never been able to ascertain the exact terms upon which said stock and bonds were sold and disposed of as aforesaid.

The bill further alleges that each and every of said representations were false; that the defendant knew them to be false, and that they were made and caused to be made by the defendant to the complainant for the express purpose of misleading and influencing him, and inducing him to act thereon; that the complainant relied upon said representations and acted upon them in the manner in which the defendant intended he should act, and that the complainant was deceived thereby, to his great and irreparable damage; that the complainant had no means of becoming informed in the premises, although he diligently sought to become so, and he had to rely upon the representations in the premises made by the defendant and other persons acting as his agents; that the complainant is informed and believes that the defendant still retains possession of, or is entitled to, or is in somewise interested in, a large number of shares of the capital stock of said Rapid Transit Railroad Company, and has possession of, or has some interest in, or is entitled to, or will become en-

titled, under his contract for the construction of the railroad of said company, to a large number of the bonds of said company, said capital stock and bonds being the same or a portion of the same stock and bonds mentioned in said contract, and which the defendant, by said contract agreed to transfer, un-under the conditions therein contained, to Owen F. Aldis, as trustee for the complainant.

The bill prayed that the assignment and surrender of said contract be vacated and set aside, and that the defendant be ordered to deliver up said contract and that the assignment thereon be cancelled; that the defendant be decreed to deliver to said Aldis, as trustee, all such stock and bonds of said Rapid Transit Railroad Company as, under the terms of said contract, the complainant had become entitled to have delivered to said trustee; that an account be taken between the defendant and the complainant, and in case the stock and bonds remaining in the defendant's hands or under his control are insufficient to fulfill the terms of said contract, that the defendant be required to disclose to whom he had sold said stock and bonds to which or to any part of which the complainant was entitled or had any interest in, according to the terms of said contract, and what consideration he received therefor, and that the defendant be restrained from selling or disposing of any of said stock or bonds or any part thereof, and from disposing of the stock, bonds or other property realized by him from the sale of a controlling interest in said railroad company, until such time as he has fulfilled his obligations under said contract, and that he be decreed to pay the complainant whatever sum of money may be found, on such accounting, he shall be unable, of said stock and bonds, to turn over to said trustee, by reason of having disposed of a controlling interest in said railroad company; and also a general prayer for relief.

A demurrer to said bill being sustained, the complainant amended his bill by inserting therein an averment, that he

had expended a considerable portion of the $40,000 received from the defendant in the payment of sundry expenditures before that time made, and sundry indebtedness before that time incurred, in and about the procurement of the right of way of said railroad, and the performance and procuring the performance of each and every other act which the complainant was required to do in and by the contract in question, and that the complainant is a man of limited means, and has not and can not procure or control the sum of $40,000 with which to make a tender to the defendant; that in case the prayer of his bill is granted, and the assignment of said contract cancelled, there will be due the complainant from the defendant, under the terms of said contract a large amount of cash, stocks and bonds, which amount will be far in excess of the sum of $40,000; that the payment of said sum by the complainant to the defendant, the cancellation of the assignment of said contract, and the delivery over of the cash, stocks and bonds to which the complainant will then be entitled, can and should be simultaneous acts, to be done and performed after an accounting has been had under the prayer of the complainant's bill; that the complainant should not be required to tender back said sum of $40,000 to the defendant, until the defendant shall cancel and surrender up said assignment under the order of said court, and pay over to the complainant whatever amount of cash, stocks and bonds shall, upon an accounting, be found due the complainant from the defendant, and that complainant tenders said sum of $40,000, to be paid to the defendant simultaneously with the cancellation and delivery to him of said assignment, and of said cash, stocks and bonds which shall be found due the complainant from the defendant.

The assignment of errors calls in question the decision of the court sustaining a demurrer to the bill as amended, and dismissing said bill for want of equity.

Mr. HUGH L. BURNHAM, for the appellant:

A court of equity has jurisdiction to compel the delivering up, for cancellation, of written instruments fraudulently, illegally or improperly obtained or withheld.    1 Story's Eq. Jur. (12th ed.) sec. 693; *Wing* v. *Sherrer,* 77 Ill. 200; *Wynne* v. *Collander,* 1 Russ. Ch. 259; *Charlesworth* v. *Jennings,* 34 Beav. 96; *Jervis* v. *White,* 7 Ves. Jr. 412; *Laymore* v. *Mitchell,* 1 Md. Ch. 496; *Preston* v. *Spaulding,* 120 Ill. 208; Pomeroy's Eq. Jur. secs. 110, 112; *Henshaw* v. *Bryant,* 4 Scam. 97; *Frazier* v. *Miller,* 16 Ill. 48; *Oard* v. *Oard,* 59 id. 46; *White* v. *White,* 89 id. 460; *McCormick* v. *Miller,* 102 id. 208.

Generally, whenever one has a right to rescind a contract, and exercises that right, he must restore the other party to the same condition that he would have been in if the contract had not been made.    But where the right to rescind springs from discovered fraud there is an exception to the rule,—the defrauded party does not lose his right to rescind because the contract has been partly executed and the parties can not be fully restored to their former position.    2 Parsons on Contracts, 780; *Hendrickson* v. *Hendrickson,* 51 Iowa, 68; *Mining Co.* v. *Gilson,* 47 Cal. 597.

The rule that he who seeks to rescind a contract upon the ground of fraud must place the other party in as good a situation as that which he occupied when the contract was made, is satisfied if the judgment asked for will accomplish that result, and in such case no offer to return that which was received is necessary.    Bigelow on Fraud, 417; *Harris* v. *Life Ass. Co.* 64 N. Y. 196; *Allerton* v. *Allerton,* 50 id. 670; Bigelow on Estoppel, 422; *Dunn* v. *Amos,* 14 Wis. 106; *Forniquet* v. *Forstall,* 34. Miss. 87; *Judge of Probate* v. *Stern,* 44 N. H. 593.

Messrs. GURLEY & WOOD, for the appellee:

The demurrer to the amended bill was properly sustained, because the complainant did not offer thereby to return to

appellee any part of the $40,000 received by him as the consideration for releasing and surrendering whatever interest he had in or under the contract in controversy. 1 Bigelow on Fraud, 423 ; *McCrillis* v. *Carlton,* 37 Vt. 139 ; *Gento* v. *Ensor,* 41 Mo. 24.

The case of *Dunn* v. *Amos,* 14 Wis. 106, has been repeatedly overruled. *Williams* v. *Kitcham,* 21 Wis. 432 ; *Grant* v. *Law,* 29 id. 99 ; *McDonald* v. *Hyde,* 23 id. 487 ; *Van Trott* v. *Wiese,* 36 id. 439.

The rule is imperative that a party can not rescind a contract, and at the same time retain the consideration, in whole or in part, which he has received under it. *Jennings* v. *Gage,* 13 Ill. 611 ; *Bowen* v. *Schuler,* 41 id. 192 ; *Ryan* v. *Brant,* 42 id. 78 ; *Lovingston* v. *Short,* 77 id. 588 ; *Wolf* v. *Dietzsch,* 75 id. 205 ; *Kellogg* v. *Turpie,* 93 id. 265 ; *Smith* v. *Brittenham,* 98 id. 188 ; 109 id. 540 ; *Strong* v. *Lord,* 107 id. 25 ; *Doane* v. *Lockwood,* 115 id. 490 ; *Farwell* v. *Hanchett,* 120 id. 573 ; *Preston* v. *Spaulding,* id. 208.

Mr. Justice Bailey delivered the opinion of the Court :

The complainant, by his bill, is seeking to rescind and procure the cancellation of a certain transaction or agreement, by which, in consideration of the sum of $40,000 to him paid by the defendant, he assigned and transferred, and, in substance, surrendered to the defendant, a certain contract between him and the defendant, by the terms of which the complainant, in consideration of certain services to be by him performed, was to have transferred to a trustee, for his use, a certain proportion of the shares of the capital stock of the Chicago and South Side Rapid Transit Railroad Company, and a certain proportion of the bonds to be issued by said company. The substance of the case made by the bill is, that the defendant, by himself and his agents, made to the complainant certain false and fraudulent representations in

relation to the value of the complainant's rights under said contract, and that the complainant, relying upon said representations and believing them to be true, was induced to and did surrender said contract to the defendant for the sum of $40,000, that being but a small part of the real value of the shares of stock and bonds to which, by the terms of said contract, he had become entitled.

It is not pretended that the complainant has ever returned or offered to return to the defendant the $40,000 received by him as the consideration for the surrender of said contract. He does not even offer by his bill, except in a qualified way, to make such return. In his original bill nothing was said on that subject, and that bill having been held insufficient on demurrer, he filed an amendment thereto, in which there is no attempt to show a return or tender of said consideration, but merely an excuse for not having made such return or tender. Said excuse is, in substance, that he has spent a considerable portion of said money, and being a man of limited means, he can not procure or control that sum of money, so as to make a tender; that if he succeeds in his suit, there will be found due him in cash, stocks and bonds, an amount largely in excess of said sum; that his return of said consideration and the delivery to him by the defendant of the cash, stocks and bonds due under said contract, should be simultaneous acts, and that the complainant should not be required to pay back said consideration until the entry of the final decree, and he offers to return it by deducting it from the amount of cash, stocks and bonds which shall, on the final hearing, be found due him from the defendant.

A contract into which a party has been induced to enter by the fraud of the other party is not void, but is only voidable at the election of the defrauded party. Until he has elected to rescind, and has performed such acts on his part as are necessary to work a rescission, the contract remains in full force, and he is entitled to no remedy which is not based upon

the theory of its continued validity. It is a general rule, to which there are but few exceptions, that the restoration of the party against whom the relief is sought, or the offer to restore him to the position which he occupied before the transaction complained of took place, is a condition precedent to the right to rescind. The right can be exercised only upon the terms of returning the consideration received, or perhaps, under certain circumstances, of returning its value. 1 Bigelow on Frauds, (ed. 1888,) 420. As said in *Neblett* v. *Macfarland*, 92 U. S. 101: "In cases of this character, the general principle is, that he who seeks equity must do equity; that the party against whom relief is sought shall be remitted to the position he occupied before the transaction complained of. The court proceeds on the principle that, as the transaction ought never to have taken place, the parties are to be placed as far as possible in the situation in which they would have stood if there had never been any such transaction."

The rule requiring a party seeking to rescind a contract for fraud to place or offer to place the other party *in statu quo*, as a condition precedent to his right to rescind, has been so frequently affirmed in this State as to require no extended discussion or illustration. Thus, in *Strong* v. *Lord*, 107 Ill. 25, it is said: "There can be no dispute as to the general rule, that the party who would rescind a contract on the ground of fraud, must restore the other party to the condition in which he stood before the contract was made." So, in *Doane* v. *Lockwood*, 115 Ill. 490, it was said: "Undoubtedly, the law is, where a party has received any valuable consideration upon the sale of property, he can not rescind the contract for fraud, without first returning or offering to return to the purchaser the consideration received, whatever it may be. The title of the fraudulent purchaser is subject to be divested, at the election of the seller, within a reasonable time after the fraud is discovered. When the sale is thus rescinded for fraud, it is as though no sale of the property had been made, and in that

event the original taking will be regarded as a tortious taking without the consent of the vendor, and the title at once becomes reinvested in him, as though it had never been divested. Until the contract is rescinded, it is obvious that both the title and the right of possession remain in the fraudulent purchaser."

In *Buchenau* v. *Horney*, 12 Ill. 336, which was a suit by a seller for the consideration of the property sold, the defense being that the sale had been rescinded by the purchaser for fraud, it was said: "A party can not rescind a contract of sale, and at the same time retain the consideration he has received. He can not affirm the contract as to part, and avoid the residue, but must rescind *in toto*. He must put the other party in as good a condition as he was before the sale, by a return of the property purchased. There may be an exception where the subject matter of the sale is entirely worthless. But if it is any benefit to the seller, the purchaser must restore it before he can put an end to the contract." To similar effect see *Jennings* v. *Gage*, 13 Ill. 610; *Bowen* v. *Schuler*, 41 id. 192; *Ryan* v. *Brant*, 42 id. 78; *Wolf* v. *Dietzsch*, 75 id. 205; *Lovingston* v. *Short*, 77 id. 588; *Kellogg* v. *Turpie*, 93 id. 265; *Smith* v. *Brittenham*, 109 id. 540; *Same* v. *Same*, 98 id. 188; *Preston* v. *Spaulding*, 120 id. 208; *Farwell* v. *Hanchett*, id. 573.

The complainant then having failed to show that, prior to the filing of his bill, he elected to rescind the transaction or agreement complained of, or took any of those steps which are legally necessary to effectuate a rescission, it must be held that, so far as is shown by the bill, said transaction remains in full force, and that the complainant is entitled to no relief based upon the theory of its rescission.

The facts alleged in the amendment to the bill are clearly insufficient to bring the case within any of the recognized exceptions to the rule that, in order to a rescission, the consideration received must be returned or tendered. The fact that, before ascertaining the alleged fraud, he had expended a large

part of said consideration, is no excuse for not tendering to the defendant the amount of said consideration. As said by Mr. Bigelow in his Treatise on the Law of Frauds: "The rule requiring tender is not dispensed with by evidence that the injured party disposed, in whole or in part, of what he had received, before having become aware of the misrepresentation. He will then be left to an action for damages, or to a right to have the contract price reduced, if the price remains unpaid." 1 Bigelow on Frauds, 425. The same rule, in substance, is held in *McCrillis* v. *Carlton*, 37 Vt. 139.

Upon analogous principles, it must be held that, the inability of the defrauded party, by reason of his financial situation or want of means, to raise the amount of the consideration received for the purpose of making a tender, after having once spent it, does not exempt him from the operation of the rule requiring such tender, in order to a rescission.

It is sought, however, by the amendment to the bill, to bring the case within an exception to the general rule, recognized by some of the authorities, viz, that where the judgment or decree itself will accomplish the result of placing the other party *in statu quo*, a tender need not be made before suit brought, but that the rescission may be made by the pleadings. Without pausing to consider the soundness of the alleged exception or its precise scope, it is clear that the case stated in the bill does not come within it. The case is not shown to be one where the defendant can be placed *in statu quo* by the decree. The consideration to be returned is $40,000 in cash. The equity to which the complainant, by his bill, claims to be entitled, is, to be reinstated in his rights under the original contract between him and the defendant, and to have said contract enforced in his favor. If restored to his rights under said contract, he will be entitled to have certain stocks and bonds of the Chicago and South Side Rapid Transit Railroad Company placed in the hands of a designated trustee for his use. The relief sought does not necessarily involve any

money decree in his favor out of which the consideration received by him could be deducted and thus satisfied. He alleges that a sufficient amount of the stocks and bonds of said railroad company to satisfy the terms of said contract still remains in the defendant's hands or under his control, and under that allegation, all the decree he could be entitled to in any event would be, that the defendant surrender to said trustee said stocks and bonds. He could claim no money decree. It is true, he prays for an accounting, and if it should turn out that the defendant has not sufficient stocks and bonds to comply with said contract, that the defendant be decreed to pay over the deficiency in money, but there is nothing showing or tending to show, with any degree of certainty, that the litigation will or can result in a money decree, and certainly not in a decree for as large a sum as the consideration received.

Under these circumstances, the only way in which the defendant could be placed *in statu quo* by the decree would be, by requiring him to account in money for the stocks and bonds to which the complainant is entitled under said contract. That clearly could not be done, at least, if the defendant saw fit to obey the decree requiring the surrender of said stocks and bonds. He would be under no obligation to retain them as the equivalent of the $40,000 paid by him as the consideration for the surrender of said contract, nor could the court compel him so to do.

Other questions are raised by counsel in their arguments, but as what we have said necessarily disposes of the case, those questions need not be considered. The judgment of the Appellate Court affirming the decree of the Superior Court will be affirmed.

*Judgment affirmed.*