McGuire v. Bradley.

## Phil McGuire v. Robert Bradley.

### Gen. No. 11,690.

1.  REPLEVIN—*when, does not lie.*   Where a sale of personal property has been induced by false and fraudulent representations, replevin does not lie to recover such personal property unless prior to the institution of the action there has been a rescission of the sale by the vendor and the placing or the offer to place the vendee *in statu quo.*

2. TENDER—*when, insufficient.* A tender made to a servant of the defendant having no authority to accept the same, is not sufficient in law, notwithstanding the defendant was at the time absent from the state.

Action of replevin. Appeal from the Circuit Court of Cook County; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the March term, 1904. Reversed and remanded. Opinion filed January 23, 1905.

SULLIVAN & JARRETT, for appellant.

DAVID B. WOODWORTH, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellee sued appellant in replevin for a horse. The declaration avers that appellee is the owner of the horse and that appellant took and unlawfully detained the same. The appellant filed pleas denying the taking and the alleged wrongful detention, and a plea averring that he, appellant, and not appellee, owned the horse, to which pleas the appellee replied issuably. The jury found for the plaintiff and judgment was entered on the verdict.

Appellant testified that he had been an owner and trainer of race horses for thirty years. The following agreement was made between the parties on the day of its date:

"CHICAGO, ILLINOIS, Oct. 28, '02.

This agreement entered into between Phil McGuire, of Lake Providence, Louisiana, and R. Bradley, of Charles City, Virginia, as follows: The said McGuire agrees to take the chestnut gelding, four years old, by Niagara, out of Charlotte, to race at New Orleans, on any track he may choose, during the winter of 1902, commencing November 17, 1902, and ending March 31, 1903; said Phil McGuire to give to said R. Bradley one-third of the gross earnings of said horse; the said McGuire reserves the right to purchase said horse at any time during the lease for $400. The above is mutually agreed to by the undersigned.

PHIL McGUIRE.
ROBERT BRADLEY."

Appellant retained the horse in his possession after March 31, 1903, and July 30, 1903, appellee sold the horse to appellant for the sum of $100, which appellant paid to him.

Appellee claims that he was induced to sell the horse to appellant by false and fraudulent representations of appellant.   He testified that appellant came to him and said the horse was worthless as a race horse and was a bad bleeder, and that he would give $100 for him, and that then appellee called a Mr. Rector and a Mr. Meredith, both of whom were in appellee's employ, and asked appellant, in their presence, to repeat his words, namely, the above statement about the horse by appellant, which appellant did.   Appellee is corroborated by Meredith and Rector as to appellant's statement.   Appellant denies that he made the statement, and says that he asked appellee if the horse was a bleeder.   There is evidence tending to prove that appellee knew when he sold the horse that he was a bleeder.   Mrs. Chapman testified that she keeps a boarding-house at the different race tracks, and that in the fall of 1902 she was trying to buy the horse from appellee, and that appellee said the horse had not showed as he expected; that he ran second in a race, and he thought he would have won had he not bled.   Arthur Logan worked for appellant as a trainer, and testified that while McGuire had the horse he bled, and that he called McGuire's attention to that fact, and that if a horse bled, witness would call him a bleeder.   Appellant's testimony corroborates that of Logan.   It is apparent that the evidence on the merits is quite conflicting.   But the judgment must be reversed for the reason that appellee did not rescind the contract of sale before bringing suit.   Even though it should be conceded that appellee was induced, by false and fraudulent representations of appellant to make the sale, the sale was not void, and the title and right of possession passed to appellant.   The sale, if so induced, was only voidable at the option of appellee, and, until rescission, appellee "is entitled to no remedy which is not based on the theory of its continued validity."   Rigdon v. Walcott, 141 Ill. 649, 660.   In order to rescind the contract, so as to divest appellant's title and right of possession, appellee was bound to pay or tender to appellant the money which he had received on the sale,

viz, $100. In the case cited, pp. 661–2, the court say : " The rule requiring a party seeking to rescind a contract for fraud to place or offer to place the other party in *statu quo*, as a condition precedent to his right to rescind, has been so frequently affirmed in this state as to require no extended discussion or illustration. Thus, in Strong v. Lord, 107 Ill. 25, it is said : ' There can be no dispute as to the general rule that the party who would rescind a contract on the ground of fraud, must restore the other party to the condition in which he stood before the contract was made.' So, in Doane v. Lockwood, 115 Ill. 490, it was said : ' Undoubtedly the law is, where a party has received any valuable consideration upon the sale of property, he cannot rescind the contract for fraud, without first returning or offering to return to the purchaser the consideration received, whatever it may be. The title of the fraudulent purchaser is subject to be divested, at the election of the seller, within a reasonable time after the fraud is discovered. When the sale is thus rescinded for fraud, it is as though no sale of the property had been made, and in that event the original taking will be regarded as a tortious taking without the consent of the vendor, and the title at once becomes reinvested in him, as though it had never been divested. Until the contract is rescinded, it is obvious that both the title and the right of possession remain in the fraudulent purchaser.' " 141 Ill. 661–2. Appellee did not, before commencing suit, pay or tender to appellant $100, or any part thereof, or any money whatever. The only answer which appellee's counsel make to this omission is, that appellee's attorney, while the trial was in progress, tendered to appellant a $100 gold certificate, which appellant refused to accept, and that he renewed such tender in open court on the trial, and that it was again refused. We think it manifest that such tenders are not sufficient. To entitle appellee to recover he must have had the right of possession when he commenced suit. His declaration necessarily speaks of a time anterior to the commencement of the suit. But appellee not having paid or tendered to ap-

pellant the $100 which he received on the sale, the sale was not rescinded, nor the title or right of possession of appellant divested at the time of suit commenced. Therefore appellee, when he commenced suit, was not the owner or entitled to the possession of the horse, as averred in his affidavit for the replevin writ, and in his declaration. This is abundantly settled, as we think, by the opinion in Rigdon v. Walcott, *supra*, and the cases therein cited. In Keller v. Robinson & Co., 153 Ill. 458, a suit in replevin, the circumstances were such as to require a demand by the plaintiff, before bringing suit. No such demand was made, but it was stipulated that, since suit was brought, a demand had been made, in respect to which the court say : " The stipulation of parties shows that a demand in this case was made after the suit was begun and the writ issued, but not before, and that the demand made was refused. That such a demand and refusal did not prove a wrongful detention at the time of bringing the suit is admitted. It is said, however, that the fact that the defendant refused to surrender the property after the writ was issued, is evidence tending to prove that a demand before the suit was brought would have been unavailing. This position we regard as untenable. The defendant had a perfect right to rely upon the defense that no proper demand of him had been made. When he refused to release his levy he had that complete defense to the action. To say that his refusal, then, is evidence that he would have done so before the suit was brought if he had been put to his election to give up the property or take the risk of litigation on the right of property alone, is, we think, illogical, and if established as a rule of law would practically dispense with a demand before suit in every case." The principle stated in the language quoted is equally applicable to an omission to pay or tender the consideration received on a sale, before bringing replevin, on the ground of alleged fraudulent misrepresentations.

Appellee's counsel says, in his argument, that " upon the trial appellee offered to prove tender of the hundred dol-

lars, before action brought, to appellant's trainer, having the horse in his possession, appellant then being absent from the state," and that the court sustained an objection to the evidence; and he argues that appellant's counsel, having prevented the admission of this evidence by objecting, is precluded from urging that there was no tender. The ruling of the court was proper. A tender to a trainer, a mere servant of appellant, who, so far as the evidence shows, had no authority to accept the tender, was clearly insufficient.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*