CLARA J. HARRIS

v.

CATHARINE F. DUMONT et al.

*Opinion filed February 17, 1904..*

1. FRAUD—*what a false representation within the meaning of the law.*
A promise to marry, accompanied by a false representation that
the promisor is an unmarried man, upon the faith of which the
promisee was induced to make an exchange of lands with the prom-
isor, constitutes a fraud, against which equity will grant relief.

2. APPEALS AND ERRORS—*a party cannot complain of an error not
prejudicing his interest.* One whose entire interest in property is
divested by a decree restoring the property to the original owner
on the ground of fraud, cannot urge as error that the decree en-
forced certain mechanics' liens against the property.

WRIT OF ERROR to the Circuit Court of Hamilton
county; the Hon. P. A. PEARCE, Judge, presiding.

This litigation includes three separate and independ-
ent proceedings. On June 15, 1897, the defendant in error,
Catharine F. Dumont, filed her bill in the circuit court
of Hamilton county against John W. Harris, the husband
of the plaintiff in error, Clara J. Harris, Rachael T. Good-
win, the mother of Clara J. Harris, M. H. Mundy and
M. J. Boyd, which bill, by leave of court, was amended
on March 16, 1898, by making Clara J. Harris a party
defendant thereto. The bill, so filed, charges fraud, and
asks for a decree, canceling and annulling the deeds and
mortgages upon the farm of 350 acres, described in the
bill. Separate answers were filed to this bill by all the
defendants. On July 6, 1897, John W. Thompson filed a
petition in the same court to enforce a mechanic's lien
against said farm, making said Boyd, Mundy, Catharine
Dumont, John W. Harris and others parties thereto. An-
swers were filed to this petition, which was a petition
for a mechanic's lien for work and labor done in building
a house upon said farm. Therein also, to the September

term, 1897, of the court, an intervening petition was filed by Thomas B. Wright and John W. Wright, as partners, also claiming a mechanic's lien on account of materials, furnished to said Thompson for the construction of said house. On January 7, 1898, the plaintiff in error, Clara J. Harris, filed a bill in said court to foreclose two mortgages, executed by Rachael T. Goodwin, one for $1100.00 to Mrs. M. J. Boyd, and the other for $5000.00 to M. H. Mundy upon said farm of 350 acres, which mortgages are alleged to have been assigned to plaintiff in error, Clara J. Harris. To this bill to foreclose Rachael T. Goodwin, Catharine F. Dumont, John Thompson, John W. Harris, T. B. Wright, John W. Wright, and others, were made defendants. Answers were filed by Catharine F. Dumont and John Thompson to the bill to foreclose. After the original proceeding to set aside the deeds and mortgages on account of fraud, and the proceeding to foreclose the mortgages, and the proceeding to enforce the mechanics' liens were at issue by the filing of replications to the answers, the three proceedings were consolidated, and heard together.

On September 28, 1898, a decree was rendered, granting the relief asked for in the original bill, setting aside the deeds and mortgages therein mentioned as fraudulent and void, dismissing the suit to foreclose the mortgages, and finding liens in favor of the petitioning creditors in accordance with the prayers of their petitions. The present writ of error was sued out on June 30, 1903, for the purpose of reviewing the decree, so entered by the circuit court of Hamilton county, it being sued out within about three months of the expiration of the five years, allowed by the statute for taking out a writ of error.

The original bill, filed by Catharine F. Dumont, alleges that she was unmarried, and a widow, and the owner of a farm, containing 350 acres more or less in Hamilton county; that about January 1, 1897, John W. Harris conceived the purpose of defrauding her by ob-

taining title to said farm through false and fraudulent
pretenses and representations; that said Harris was, and
still is, a married man, living in Evansville, Indiana, of
good address, agreeable manners, "a smooth scoundrel"
capable by falsehood and deceit of winning her confi-
dence; that, with intent to cheat and defraud her out of
the title to said land, he proposed marriage to her; that
she, being deceived by his false representations in which
she confided, and not knowing his ulterior purpose to
cheat, accepted his proposition, not knowing that he was
a married man, and agreed within a reasonable time to
marry him; that, immediately after obtaining her prom-
ise, he insisted that she should sell and dispose of her
real estate, and represented that, upon their marriage,
they would reside in Evansville, Indiana; that he rep-
resented that he had great wealth, and that, after their
marriage, it would be undesirable to have land in Hamil-
ton county; that, relying upon his integrity, she agreed
with him to exchange said farm in Hamilton county
for real estate in Huntingburg, Indiana; that, at his in-
stance, on January 23, 1897, she executed a deed, con-
veying the said farm to Rachael T. Goodwin of Wabash
county, Illinois, and delivered said deed to said John W.
Harris, and received from him a deed, executed by Rach-
ael T. Goodwin, dated January 25, 1897, conveying to
Catharine F. Dumont real estate in Huntingburg, Indi-
ana; that, as to the value of the latter, she relied upon
the fraudulent representations of said Harris; that said
Goodwin was a relative of his and conspiring with him
to cheat and defraud her; that, on February 1, 1897, he
procured the said Goodwin to make a fraudulent mort-
gage on the farm of 350 acres to one M. J. Boyd for the
pretended consideration of $1100.00 to become due in five
years, which was filed February 16, 1897; that, to further
carry out his fraudulent scheme, he procured said Good-
win on February 13, 1897, to execute and deliver to one
M. H. Mundy a fraudulent mortgage on said farm for

$5000.00 to become due in five years, which was recorded on February 15, 1897; that both said mortgages were without valuable consideration, and made at the instance of Harris for the purpose of cheating and defrauding her, and were received by said Boyd and Mundy knowingly for the same purpose; that said Harris, in pursuance of his intention to defraud her, falsely represented that, if she would convey to him the Huntingburg property, he would convert it into $3500.00 cash; that, expecting to marry him soon and relying on his promise, and being deceived and duped, she conveyed to him the Huntingburg property, a few days after it had been conveyed to her, for the purpose of having it converted into said sum of money, but he did not so convert it, but, conspiring with said Mundy to defraud her, procured a deed from Mundy and his wife to be made to her, conveying to her 160 acres of land in Nevada county, Arkansas, for a pretended consideration of $3500.00; that she received said deed to the Arkansas land, and returned to said Harris his note for $3500.00, which she held for the Huntingburg property; that said Harris and Mundy represented to her that said Arkansas land was well worth $3500.00, when in fact it was almost worthless, and was used in pursuance of a scheme to defraud her out of the Hamilton county farm; that she offers to re-convey to said Mundy said Arkansas land; that, on June 14, 1897, said Harris obtained a fraudulent deed from said Goodwin to himself of all of said Hamilton county land, being 350 acres, and the said Huntingburg property; that Harris, Goodwin, Mundy and Boyd, in relation to said deeds and mortgages, separately and together conspired to defraud her; that the said transactions and conveyances were the results of such conspiracy; the bill prays that the deed of January 23, 1897, by which she conveyed the Hamilton county land be annulled, and that said mortgages made by Goodwin to Boyd and Mundy be annulled; that said deed, dated June 14, 1897, made by Goodwin to Harris,

conveying said 350 acres, be annulled, etc., and for general relief, etc. The final decree of the court found substantially in accordance with the prayer of the bill, and decreed that the deed of the 350 acres to Rachael T. Goodwin, and the deed of the same land, made by Mrs. Goodwin to John W. Harris, were null and void, and that the mortgages to Mrs. Boyd and Mr. Mundy were void and inoperative; that Catharine F. Dumont was the owner of the Hamilton county real estate, and should be let into possession thereof, etc.

E. B. GREEN, and THEODORE G. RISLEY, for plaintiff in error.

T. B. STELLE, LEONIDAS WALKER, and JOHN R. CROSS, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

In considering the question, whether or not the decree, entered by the circuit court, was correct, we will refer only to the reasons urged by the plaintiff in error, Clara J. Harris, why the decree should be reversed, and in the order in which those reasons are presented in the argument of counsel.

*First*—It is contended by counsel for plaintiff in error, that there was no equity on the face of the bill, filed below by defendant in error, Catharine F. Dumont, upon the alleged ground that she did not, upon the discovery of the alleged fraud, before filing her bill, offer to convey back to Rachael T. Goodwin the Huntingburg property, received by her in exchange for the Hamilton county farm. In other words, it is said that there was no offer in her bill to place Mrs. Goodwin *in statu quo*. In support of this contention the rule is invoked that, before a court of equity will rescind an exchange of lands, or a sale of lands, on the ground of fraud, it must be averred and proven that the party, seeking the relief, has offered, and

is ready and able, to place the other party *in statu quo.*
(*Brady* v. *Cole,* 164 Ill. 115; *Dowden* v. *Wilson,* 108 id. 257).

We are of the opinion that, under the facts of this
case, it was not necessary for the defendant in error,
Dumont, to restore to Rachael T. Goodwin the Hunting-
burg property. The bill offers to re-convey to Mundy the
Arkansas property; and the decree requires Mrs. Dumont
to execute to John W. Harris a deed, conveying to him
the Arkansas land, and also orders her to deposit the
deed and the sum of $92.51, paid to her, with the clerk
of the court within thirty days. This was the only re-
quirement, which it was necessary to make of her, in
order to do complete justice.

John W. Harris induced Mrs. Dumont, a widow with
two children, to deed her farm of 350 acres, worth about
$5000.00 to Mrs. Rachael T. Goodwin, his mother-in-law,
in exchange for certain lots in Huntingburg, Indiana.
There is testimony, tending to show that, at the time of
the exchange in January, 1897, the Huntingburg property
was worth only about $500.00, and there is other testi-
mony, tending to show that it was worth from $3000.00
to $4000.00. The court below in its decree found that
the Hamilton county farm was worth about $3500.00, and
the Huntingburg property was not worth over $500.00.
While the evidence upon this subject of value was con-
flicting, we see no reason for disturbing the finding of
the court below. But we do not regard the comparative
values of the Hamilton county land and the Huntingburg
land as being important factors in this case.

When John W. Harris induced Mrs. Dumont to con-
sent to the exchange, the title to the Huntingburg prop-
erty was in Clara J. Harris, the wife of John W. Harris.
On January 22, 1897, just after Mrs. Dumont's consent to
the exchange, the Huntingburg property was conveyed
by Clara J. Harris and John W. Harris, her husband, to
Rachael T. Goodwin, the mother of Mrs. Harris. On the
next day, January 23, 1897, Mrs. Dumont, at the instance

of Harris, conveyed her farm to Rachael T. Goodwin. Mrs. Dumont swears that Harris told her that he was an unmarried man. Harris denies that he represented to her that he was an unmarried man. They contradict each other directly as to this representation. But there are many circumstances, developed by the evidence, which tend to confirm the statement of Mrs. Dumont upon this subject. One of them is the fact that, as soon as the exchange was agreed upon, Harris and his wife conveyed the Huntingburg property to Mrs. Goodwin, and then Mrs. Goodwin made the conveyance to Mrs. Dumont. As the title was in Mrs. Harris, there is no reason why Harris and his wife should not have conveyed the Indiana land directly to Mrs. Dumont, if it was not his purpose to conceal from her the fact that he had a wife. She would have discovered his marriage, if he had tendered her a deed, executed by himself and Mrs. Harris. The fact, that he caused the title to be conveyed to his mother-in-law and to be deeded by the latter to Mrs. Dumont, would indicate an intention to conceal the fact of his marriage. But on March 2, 1897, Harris induced Mrs. Dumont to convey to him the Huntingburg property, and, in exchange for such conveyance, he gave to her his personal note for $3500.00, or, according to some of the testimony, for $3000.00. After having induced her to deed to him the Huntingburg land in exchange for his personal note, he then, on March 15, 1897, induced her to surrender to him his note, and to take in exchange for it a deed of 160 acres of land in Arkansas. This deed was executed to her by a lawyer by the name of M. H. Mundy. The title to the Arkansas land, it appears, had been conveyed to Mundy by Harris, and it is claimed that Harris and Mundy each owned an undivided half of the Arkansas land. It is proven beyond question, that this Arkansas land was worth only from fifty to seventy-five cents per acre, that is to say, from $80.00 to $120.00. It is shown by a letter, written by Harris to Mrs. Dumont, and by

other testimony, that he falsely represented to her that a man, named Wilkinson, had offered $2750.00 for this Arkansas land. Wilkinson, however, in a letter, written by him and dated May 23, 1897, advises Mrs. Dumont to keep the letter Harris wrote to her as evidence of fraud, and denounces Harris as "a liar and a thief."

It thus appears that Harris himself obtained the title to the Huntingburg land, and that Mrs. Dumont in fact received nothing in exchange for her farm, except the Arkansas land, which was worth only from $80.00 to $120.00. When, therefore, she tendered to Harris a deed of the Arkansas land, she offered to restore all that she had, as matter of fact, received, except a small amount of money, which the court also required her to deposit in court. The evidence shows that Mrs. Goodwin had no interest in this transaction, except that she was entitled to the right to live on the Indiana land during her life. The evidence is conclusive to our minds that, in all these matters, John W. Harris was acting as the agent and representative of his wife and of his mother-in-law, and that they were mere tools in his hands to carry out his plans, and obey his instructions. They must be held responsible for what he did. He swears himself that he acted in their behalf. While, therefore, the title to the Indiana lots was not actually conveyed back to Mrs. Goodwin, it was conveyed to her agent, John W. Harris.

*Second*—It is claimed, on the part of plaintiff in error, that this transfer or exchange of lands cannot be rescinded by Mrs. Dumont, upon the ground that he made no representation of an existing fact, but merely made a promise as to what he would do in the future. In other words, it is said that he promised to marry her, and take her to a comfortable home in Evansville where she would no longer need the Hamilton county lands, and that this constitutes no fraud, upon the alleged ground that a false representation, within the meaning of the law, must be as to a past or present state of facts, and not merely as

to an intention to do something in the future. (*Haenni* v. *Bleisch*, 146 Ill. 262; *Murphy* v. *Murphy*, 189 id. 360; *Brady* v. *Cole, supra*). We have no fault to find with the doctrine, thus invoked, that the false representation must be as to an existing or past fact, and not merely a promise to do an act in the future. But, in the case at bar, there was not merely a promise to marry the defendant in error, Dumont, at a future time, but there was a false representation by Harris as to an existing fact. That is to say, being a married man, he represented it to be a fact, that he was an unmarried man. It was upon the false representation of the existing fact as to his marriage, or non-marriage, that her promise to him was based. It cannot, therefore, be said that here was merely a representation as to what he intended to do in the future, but he went further and falsely represented that he was an unmarried man, and thereby gained her confidence.

Not only did Harris obtain the Huntingburg property for himself by inducing Mrs. Dumont to convey it to him, but he also obtained the title to the Hamilton county farm, because it appears that, on June 14, 1897, that farm was deeded to him by Mrs. Goodwin; so that he finally himself obtained the title to both pieces of property, involved in the exchange.

*Third*—It is claimed on the part of the plaintiff in error that the court below erred in dismissing the bill to foreclose the two mortgages, executed by Mrs. Goodwin to Mrs. Boyd and M. H. Mundy. As to the mortgage for $5000.00 to Mundy, there was no consideration for it whatever, and, very soon after obtaining it, Mundy transferred the mortgage and the note for $5000.00, secured thereby, to Mrs. Harris. He says himself in his testimony that he had no interest in the note or mortgage, and took it because Harris requested him to do so, and assigned it to Mrs. Harris because Harris requested him to do so. As to the mortgage for $1100.00, made to Mrs. Boyd, that mortgage also was transferred by Mrs. Boyd

to Mrs. Harris. There may have been some money advanced upon this mortgage by Mrs. Boyd to Harris, or his wife, or Mrs. Goodwin, but the testimony shows that a mortgage was executed to Mrs. Boyd upon the Huntingburg land, as a substitute for the mortgage upon the Hamilton county land. Although the mortgage for $1100.00 on the Hamilton county farm was not actually released, yet the testimony tends to show that it was paid, either in money, or by a mortgage upon the Indiana land, or by the personal obligation of Mrs. Harris. We are of the opinion that the chancellor below correctly decided that these mortgages were fraudulent, and that their execution was merely a part of the scheme to defraud the defendant in error, Catharine F. Dumont. The decree therefore properly directed that the bill to foreclose should be dismissed.

*Fourth*—The plaintiff in error complains of the decree, so far as it enforces the mechanics' liens in favor of the parties, furnishing labor and material to construct a house upon the farm in Hamilton county. It appears that, at some time during the progress of these transactions, the house, which had been occupied by Mrs. Dumont upon the farm, was burned down, and Thompson was employed to build a house, and Wright and his son furnished the material for its construction. Whether this part of the decree, enforcing the mechanics' liens claimed by the petitioners, is correct or not, it is not necessary to decide. Inasmuch as the decree restores to Mrs. Dumont her farm of 350 acres, and forbids the foreclosure of the mortgages against it, it can make no difference to the plaintiff in error, Clara J. Harris, whether the decree enforcing the mechanics' liens is correct or not. She has no interest in that matter, inasmuch as she is held to have no interest in the property against which the liens are enforced. The defendant in error, Catharine F. Dumont, does not complain of the decree enforcing the mechanics' liens, and assigns no cross-errors in rela-

tion thereto.   If she chooses to take her property back, subject to the decree enforcing these liens, it is a matter, which has no concern for the plaintiff in error, and of which the plaintiff in error cannot complain.   Counsel for plaintiff in error, in their brief, say: "So far as the plaintiff in error, Mrs. Clara J. Harris, is concerned, the decree of the circuit court, awarding a mechanic's lien on the Hamilton county lands, is a matter of no interest .to her, unless the decree, rendered on the bill of Catharine Dumont, and on her bill to foreclose the mortgages, shall be reversed, or modified, so as to protect the mortgages, one or both."   The law does not permit a litigant to complain of an error, which does not operate to the prejudice of the litigant complaining.

We discover no good reason for disturbing the decree, entered by the chancellor upon the hearing had in the lower court.   Accordingly, the decree of the circuit court of Hamilton county is affirmed.

*Decree affirmed.*