## William M. Mount, Appellant, v. James C. Norman et al., Appellees.

1. CANCELLATION OF INSTRUMENTS, § 26*—*when doctrine of laches cannot be invoked.* The doctrine of laches, because of delay in the commencement of a suit to rescind a contract to exchange property, cannot be invoked by a party who fraudulently concealed the acts of his own fraud in misrepresenting the value of the exchanged property, in falsely representing after the party ascertained the worthless character of exchanged land and demanded reconveyance of the land conveyed by him and the return of notes given in part payment that such land had been conveyed and the notes had been assigned to a bona fide purchaser for value.

2. CANCELLATION OF INSTRUMENTS, § 2*—*when inability to make restitution to the statu quo not a defense.* The inability of the complainant in an action to cancel a contract of exchange of property to place the defendant in *statu quo* is not available as a defense where at the time complainant gave his note and conveyed land in exchange for the land conveyed by defendant, defendant misrepresented the value of his land and subsequently upon com-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

plainant's learning of such fraud fraudulently represented that the land which he had received had been conveyed and the note assigned to a bona fide purchaser for value, and complainant relying upon such statement conveyed the land received from defendant to another.

3.   CANCELLATION OF INSTRUMENTS, § 2*—when offer to place defendant in statu quo unnecessary.   An offer to place a defendant to a suit for the cancellation of a contract for exchange of real property on the ground of fraud in statu quo is unnecessary where the property which complainant received is of no value.

Appeal from the Circuit Court of Tazewell county; the Hon. JOHN M. NIEHAUS, Judge, presiding.   Heard in this court at the October term, 1915.   Reversed and remanded with directions.   Opinion filed October 13, 1916.

WILLIAM A. POTTS, for appellant.

CURRAN & DEMPSEY, for appellees; BARRY & MORRISSEY, of counsel.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Appellant filed his second amended bill in equity in the Circuit Court of Tazewell county, which in substance avers that prior to December 6, 1912, he owned in fee 480 acres of land in Arkansas, which was reasonably worth $40 per acre at a fair cash value and was subject to a mortgage incumbrance of $10,000; that he had purchased the same from the appellees Fannie R. and James C. Norman; that on said date mentioned, on account of the many false statements and fraudulent acts of the said Normans and others confederating with them (not necessary to be here set forth), made with the malicious, fraudulent and wrongful intent to deceive him as to the value of certain lots located in the City of St. Louis owned by Fannie R. Norman, and cheat and defraud him out of said Arkansas land, he was induced to convey said Arkansas lands to the said Fannie R. Norman and to execute and deliver to her two promissory notes, one

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

for $10,000 payable in one year and one for $5,000 payable in three years, in exchange for the conveyance to him of said lots owned by her located in St. Louis.

That said St. Louis property was incumbered by mortgages to an amount exceeding the value thereof and there was no equity in the same; that after he discovered that said St. Louis property had no value and he had been deprived of his Arkansas lands and had executed his promissory notes through the said fraud of the Normans, he demanded of the latter that they reconvey to him the Arkansas lands and return to him the notes, but that said Normans represented that they had conveyed said lands and had assigned said notes to a bona fide purchaser for value. That they had in fact conveyed said Arkansas lands and he believed, on account of their false representations to that effect, that they had so assigned said notes, but in fact they had not assigned the notes, and their representations that they had done so were false and were made for the purpose of deceiving him in regard thereto; that the Normans were insolvent and any action at law against them for damages for fraud and deceit would be unavailing.

That subsequently, still believing that said notes had been assigned as aforesaid, he conveyed the St. Louis property subject to the mortgage indebtedness thereon to the Normans in exchange for certain lands in North Dakota owned by them, which were subject to a mortgage indebtedness of $8,400; that subsequently he exchanged said North Dakota property, subject to said incumbrance, for 360 acres of land in Missouri, which was subject to a mortgage incumbrance of $13,400; that the equity in the Missouri property exceeds the value of the equity in the St. Louis property and equals that in the North Dakota property, but is less than that in the Arkansas property conveyed by him to said Normans as aforesaid; that he still owns the Missouri property; that he is informed

that said note for $5,000 contains a provision to the effect that if the interest thereon was not paid annually that the whole amount of the principal and interest could, at the option of the legal holder of said note, be immediately declared due; that said Normans claim to have sold and assigned said note for $5,000 to one John Stapleton and claim to have sold and assigned the $10,000 note to the Ashley County Bank of Hamburg, Arkansas, and is informed and believes, and so states the fact to be, that neither of the said Normans have in truth or in fact sold or assigned either of said notes; that said notes are under the control of said James C. Norman, either as his notes or the notes of Fannie R. Norman, and that the said Ashley County Bank is not the legal holder of said $10,000 note for value without notice; that said note is without consideration; that said Stapleton is not the legal holder of said $5,000 note for value without notice that said note is without consideration; that both the bank and Stapleton had full knowledge of the fraud and deceit practiced upon him in procuring said notes to be executed, and full knowledge that said notes are without consideration; that they did not pay value therefor, but hold said notes for the said Normans in fraud of his rights.

That as collateral for said note of $10,000 he assigned to James C. Norman 409 shares of the capital stock of the Farmers Telephone Company of Hopedale, Illinois, which stock is now held by the said Normans or by some person for them; that at the February term, 1913, of the Circuit Court of Tazewell county, Stapleton commenced suit to recover the amount of principal and interest on the $5,000 note; that prior to the 30th day of March, 1914, the bank demanded payment of the $10,000 note; that relying upon the false representations of the said James C. Norman concerning the ownership of said notes, in order to satisfy the same, and believing them to be in the hands of legal

holders thereof as aforesaid, at the request and suggestion of the said Normans he executed a deed conveying 280 acres of land in Tazewell county, Illinois, to James M. Rahn, as trustee, and that thereupon the said Rahn by declaration of trust in writing agreed to make sale of said real estate and out of the proceeds thereof to pay the said notes in the manner therein agreed that said real estate should not be sold for less than $75 per acre; that said declaration of trust was not signed by him, was not made a matter of record in said county at the time it was executed and he did not receive a copy thereof until about September 1, 1914, and did not know the contents thereof prior to that time.

That he did not know that the bank and Stapleton were not the legal holders and owners of said notes until after the execution and delivery of the deed of trust last mentioned and until after the execution and delivery to him of said declaration of trust, and that he did not know that the said Normans were the holders and owners of said notes and had not in fact sold the same until a short time prior to the filing of the original bill in this cause; that the execution of said deed by Rahn as trustee was procured upon the false representations of James C. Norman and the false, fraudulent and deceitful conduct of said bank and Stapleton.

He demands the surrender of the $5,000 and $10,000 notes and reassignment to him of the telephone stock, and that Rahn reconvey to him the Tazewell county land, and tenders back to the said Normans, or to any one of the defendants who may be entitled thereto, the equity he now holds in the Missouri farm to be used to the extent that may be required in satisfaction and liquidation of any excess in the value of the equity of the St. Louis property over the equity conveyed in said Arkansas property which the court may find to have existed at the time of the trade for said property,

or to equalize the equity between him and said defendants at this time.

That the procuring of said deed to Rahn as trustee was a fraud upon him; that he is informed that Rahn is about to sell a portion of said property to one Mary E. Allard pursuant to said declaration of trust and under the direction of James C. Norman, J. J. Morrissey and John Stapleton; that Morrissey has no interest in said notes except as attorney for said bank; that any sale of said property is in fraud of his rights and will operate as a cloud upon his title; that Morrissey, Stapleton and the Normans are threatening and endeavoring to compel Rahn, the trustee, to sell said property to one Mary E. Allard at a price less than $75 per acre in violation of said declaration of trust, and that said Rahn is about to sell property at a price less than $75 per acre to his irreparable loss, etc.

That by reason of the fraud of the Normans he has sustained a loss of more than $9,000, and if they be permitted to compel the payment of said notes, there will be an additional loss to him of more than $15,000, no part of which can be recovered from said Normans because of their insolvency.

The bill makes the Normans, Stapleton, Morrissey, Rahn, the Ashley County Bank and Mary E. Allard, parties defendant, and prays that the two notes executed by him be canceled and delivered up; the said telephone stock be reassigned and surrendered; tenders back to the Normans the Missouri farm to be used in satisfaction and liquidation of any excess of value of the equity in the St. Louis property over the equity in the Arkansas property, if any, which the court may find to have existed at the time of the trade; that the deed executed by him to Rahn be set aside and that Rahn be required to reconvey said premises; that Rahn be restrained and enjoined from selling or in any way disposing of said property, and that the other defendants be enjoined from further assigning or

otherwise disposing of said notes and telephone stock and from prosecuting any suit or proceedings either in law or equity for the collection of said notes.

The bill is sworn to and to it is attached exhibit "A," warranty deed from the Normans to complainant of the St. Louis property; exhibit "B," warranty deed executed by complainant and his wife conveying the Tazewell county property to Rahn; and exhibit "C," the declaration of trust executed by Rahn and signed by Morrissey, Stapleton and the two Normans.

Joint and several demurrers were filed to portions of the amended bill and answers filed to the portions not demurred to. The court found that from the allegations of the amended bill, complainant had been guilty of laches and that he is unable to put the defendants James C. Norman and Fannie R. Norman *in statu quo,* sustained the demurrers and dismissed the bill in all averments thereof pertaining to the rescission of the contract between the complainant and the Normans, and dismissed the bill for want of equity as to all portions thereof pertaining to any relief prayed for against the defendants Stapleton, Morrissey and the Ashley County Bank. This appeal is prosecuted to review the judgment of the court in sustaining these demurrers.

The appellees insist, and the chancellor in the court below so held, that appellant is not entitled to any relief as against the Normans, Stapleton, Morrissey and the Ashley County Bank, because he was guilty of laches in failing to act promptly on learning of the misrepresentations and fraud averred in the amended bill, and also that having parted with the title to the St. Louis and North Dakota properties, restitution cannot be made to the Normans so they may be placed *in statu quo,* he is barred from obtaining any relief as to them.

The averments of the bill show a continued series of transactions made for the sole purpose of depriving

appellant of a valuable tract of land in Arkansas through fraud and deceit by inducing him to exchange the same for property in St. Louis which was already incumbered for more than its value. It is further averred that upon the discovery of this fraud, appellant immediately demanded a rescission of the contract and a reconveyance to him of the Arkansas land and the return of the notes he had executed, but that through the fraud and deceit of the Normans he was induced to believe that they had sold the notes to a bona fide purchaser for value, which was in fact untrue. The amended bill further charges that Stapleton and the bank were not bona fide purchasers of the notes but had knowledge, at the time of the pretended assignment to them, of the fraud which induced their execution and that they were without consideration. It is also charged that appellant was induced to execute the deed to Rahn as trustee through the fraud of the Normans, and while he was still in ignorance of the fact that the bank and Stapleton were not bona fide holders thereof. The demurrers admit these facts to be true.

If the allegations in the bill are true, it was a systematic fraudulent concealment of the true facts in regard to the negotiation of the notes up to the time this bill was filed. Equity does not seek to shield perpetrators of fraud from the result of their own misconduct. The doctrine of laches cannot be invoked by one whose fraudulent concealment of the acts of his own fraud has kept his victim in ignorance thereof. *Leonard v. Springer*, 197 Ill. 532; *Linington v. Strong*, 107 Ill. 295.

The same principle announced in regard to the doctrine of laches applies with equal force to the rule in equity, that there must be restitution to the *status quo* before a rescission of the contract will be permitted. In the case of *Taylor v. Taylor*, 259 Ill. 524, the following doctrine from Pomeroy's Equity Jurisprudence is

quoted with approval: "In cases of fraud, if the defendant's act has prevented a complete restoration of the *status quo,* he cannot, in justice, urge this fact as a defense to the rescission." In the opinion in the latter case the court further says: "The author further says that many courts, in dealing with the question of rescission, have completely lost sight of the distinction between the equitable remedy and the legal remedy of rescission, and points out why the rule requiring an offer to place the defendant *in statu quo* before bringing suit is not of universal application in courts of equity, and says insistence upon it in equitable proceedings would often work a complete denial of justice." See also, *Harris v. Dumont,* 207 Ill. 583; *Mitchell v. Mitchell,* 263 Ill. 165.

Another exception to the rule is that the offer need not be made when it appears that the property is of no value. In *Mitchell v. Mitchell, supra,* the court said: "There are certain exceptions to this rule, such as where what has been received is worthless, or where, because of peculiar circumstances not the fault of the party seeking rescission, restoration of that received is impossible." It is alleged in the amended bill that the St. Louis property was worthless, being incumbered with mortgages amounting to more than its value, and also that appellant was induced to make this exchange by the Normans themselves.

We are of the opinion that sufficient equity appears on the face of the amended bill to require it to be answered. The decree therefore, in so far as it sustains the demurrers and finds facts adversely to appellant, is reversed and the cause remanded with directions to overrule the demurrers.

*Reversed and remanded with directions.*