## *Ex parte* MERRIAN.

Where lands have been mortgaged to the state and afterwards sold by the mort-· gagor in parcels to several purchasers at different times, those who hold the earliest conveyances from the mortgagor, upon filing the affidavit required by the act of 1839, (*Stat. p.* 347,) may require the attorney general to sell the mortgaged premises in parcels, and in the reverse order of the conveyances from the mortgagor, though a party holding under a later conveyance has procured a separate account to be opened respecting his parcel, and has tendered to the treasurer the amount charged thereon in such account.

MOTION for a mandamus, to be directed to the treasurer and comptroller of this state, requiring the former to receive the amount alleged to be due the state upon certain premises owned by the relator, which are included in a mortgage to the state, and requiring the latter to execute an instrument discharging such premises from the lien of the mortgage. The material facts established by the affidavit are as follows : On the 16th . day of May, 1816, S. Dewitt mortgaged to the people of the state, 322 acres of land, part of lot 97 in the township of Ulysses, to secure a loan of $1200. He died in 1834 ; and his executors, pursuant to a power contained in his will, sold and conveyed 122 acres of the mortgaged premises to L. Gere, in August, 1836, and 131 acres thereof to T. Downing, in May, 1837. These sales were for a full consideration, without any deduction on account of the lien. On the 24th day of August, 1841, Merrian, the relator, purchased 53½ acres of the residue of the premises, of the heirs and devisees of S. Dewitt, who conveyed the same to him, with warranty. The remainder of the premises, 15½ acres, remain unsold.

The principal of the state mortgage having become payable, and there being a default in the payment of interest, the attor ney general, on the 23d day of July, 1846, advertised the whole of the mortgaged premises for sale—to take place on the 21st day of October thereafter, at the city of Albany. On the 5th day of October, 1846, Merrian, pursuant to 1 *R. S.* 175, § 33 *et seq.*, procured a new account to be opened at the comptrol

ler's office, for the part of the mortgaged premises which he had purchased, charging them with $207,53 principal, and $103,10 interest, as the proportion of the mortgage debt for which that portion of the mortgaged premises was liable; and the comptroller executed a certificate of the opening of such new account. On the 20th October, 1846, an agent of Merrian went to the treasurer's office, and there, in the presence of the deputy comptroller, tendered the amount of principal and interest due on the new account, and offered to pay his proportion of the costs of foreclosing, and demanded a discharge of his portion of the mortgaged premises from the lien of the mortgage, pursuant to § 37 of the provisions above referred to. The state officers, under the advice of the attorney general, refused to receive the money and execute the discharge. Subsequently, and on the morning of the day of sale, Merrian went to the comptroller's office and offered to pay the interest on his part of the premises with a view of having it withdrawn from the sale, which the comptroller declined to receive, intimating that the rights of the parties claiming under the representatives of Dewitt, had better be presented to the court. On the 19th day of October, 1846, Downing and a grantee of Gere, respectively, delivered to the attorney general affidavits setting forth their titles to the respective portions of the mortgaged premises owned by them, indicating such parcels with certainty, according to the act of 1839. (*Stat. p.* 347.) Merrian was informed of these proceedings when he offered to pay the interest as before mentioned. The attorney general postponed the sale in order that this application might be made.

*O. Meads,* for Merrian.

*J. A. Collier,* contra.

*By the Court,* JEWETT, J. The relator claims an absolute right under the provisions of the revised statutes, (1 *R. S.* 175, § 33 *et seq.*) to have his part of the mortgaged premises discharged upon payment by him of the amount of the mortgage

debt charged thereon, in the separate account. These provi sions, in terms, direct the giving of such discharge upon pay- ment of the debt charged upon a separate parcel of the premises mortgaged, in respect to which a separate account has been opened. (§ 37.) Before a new account is opened the comp- troller is to be satisfied that the residue of the lot is of sufficient value to satisfy the remainder of the debt. (§ 40.) This, it is presumed, was done in this case.

But by an act passed in 1839, (*Stat. p.* 347,) the grantees of a mortgagor in a state mortgage, may, pending the proceedings to foreclose, make affidavits of their respective titles, and indi- cate with *certainty* the parcels of the premises owned by them, upon which it is made the duty of the attorney general, in the first place to sell any portion of the mortgaged premises not alienated by the mortgagor, and if that does not produce suffi- cient to pay the mortgage, then to sell the residue *in the re- verse order of its alienation*—thus preserving the rights of the parties according to principles well established in courts of equity. Under this statute the duties of the public officers would be entirely plain were it not, for the separate account opened at the instance of the relator and his claims to an ad- vantage over the prior grantees arising out of the provisions of the revised statutes relating to separate accounts. But for this feature of the case, the attorney general would be bound, in the first instance, to sell the 15½ acres unconveyed ; then the re- lator's land, then Downing's, and lastly that owned by the grantee of Gere—ceasing to sell, of course, when the proceeds of the sale should be sufficient to pay the mortgage debt and costs.

The principle adopted at the comptroller's office upon an ap- plication for a separate account, is to charge the land of the applicant with such a proportion of the debt as the quantity and value of his land, exclusive of buildings, bear to the whole lot mortgaged. This would doubtless be correct in relation to land purchased from the state and held under contract, and also in a case where land had been mortgaged to the state, and the mortgagor had conveyed different parcels to several indi- viduals at the same time, and it would be well enough where

only one conveyance had been made by the mortgagor, and the grantee in that conveyance should apply for a separate account. He might however, where he had not assumed the payment of any part of the mortgage debt, safely rely upon having the part unsold first subjected to sale on the state mortgage, before the part purchased by him was interfered with. But in a case circumstanced as this is—of several grantees under conveyances of different date—it is manifest that an apportionment, on the application of a junior grantee, made after the passage of the act of 1839, which should limit the burden upon his parcel to such an amount as to leave the premises of prior alienees exposed to sale, before the parts held under the subsequent alienation should be exhausted, though such prior alienee had made the prescribed affidavit, would be illegal. Under the circumstances of this case, the relator cannot claim to have his parcel discharged until he shall have paid the balance due on the mortgage, after first applying the proceeds of the sale of the $15\frac{1}{2}$ acres unconveyed. There is an apparent conflict between the general provisions of the revised statutes and the act of 1839 ; but taken together, I do not see that they will admit of any other construction than the one which I have given them. Upon the construction insisted on by the counsel for Merrian, the state would lose the whole mortgage debt beyond what may be realized from the sale of the $15\frac{1}{2}$ acres and the amount charged upon Merrian's parcel in the separate account ; for by the positive terms of the act of 1839, the requisite affidavits having been made, the premises conveyed to Downing and Gere cannot be sold, until after that of the relator shall have been sold. It does not appear that either Gere or Downing have opened a separate account, and it is not pretended that either of them agreed with their grantors to assume any portion of the mortgage debt. They purchased without any reference to the lien, and looked to their grantors to relieve the premises from that debt. The motion must be denied.(a)

Motion denied.

(a) Decided in December, 1846.