JOHN SENFT

*v.*

JAKUB VANEK.

*Opinion filed April 20, 1904.*

1. MORTGAGES—*effect where mortgaged lots are sold to different parties.*
Purchasers of different lots covered by the same encumbrance are
bound to contribute ratably towards the discharge of the encum-
brance in proportion to the value of their respective lots.

2. SAME—*equity will not permit fraud to cut off right of redemption.*
A court of equity will not permit a fraud or trick to deprive a party
of his right, under the statute, to redeem his property at a figure
somewhere near the real value of the property.

3. SAME—*when equity will not refuse redemption.* Payment by one
defendant in a proceeding to foreclose a trust deed on the lots of
both defendants, of the entire encumbrance, amounting to some
$6000, at the sale of his co-defendant's lot, which was not worth
over $400, in furtherance of a scheme to virtually deprive the lat-
ter of his right to redeem his property, is fraudulent in equity.

4. EQUITY—*when complaint as to character of master's sale comes in
time.* Complaint as to the character of a master's sale is not too
late when made in a bill for equitable redemption filed three days
after the report of sale was approved, in the same court, even
though the objection was not presented to the report of the sale.

5. SAME—*allowance of amendments in chancery case are largely discre-
tionary.* The matter of allowing amendments to the pleadings in
a chancery case rests largely in the discretion of the trial court.

*Senft* v. *Vanek,* 110 Ill. App. 117, reversed.

APPEAL from the Appellate Court for the First Dis-
trict;—heard in that court on appeal from the Superior
Court of Cook county; the Hon. A. K. VICKERS, Judge,
presiding.

This is a bill, filed on October 4, 1900, in the superior
court of Cook county, which, as finally amended, is sub-
stantially a bill to secure an equitable redemption from
a foreclosure sale. Some of the defendants demurred to
the bill, and some of the defendants answered the bill.
A reference was taken during the progress of the pro-
ceedings to a master in chancery, who made a report, to

which exceptions were taken, and said report was approved and confirmed. Upon the sustaining of a demurrer by one of the defendants to the amended bill, the court below dismissed the bill for want of equity. An appeal was taken to the Appellate Court, where said decree of dismissal has been affirmed. The present appeal is prosecuted from such judgment of affirmance.

The facts are substantially as follows: On January 10, 1893, Anthony Kozel owned lot 2, and all of lot 1 (except the east twenty-one feet and five inches thereof), in a certain subdivision in Cook county. On that day Kozel and his wife executed a deed of trust, conveying all of said premises to Moses E. Greenebaum, as trustee, to secure their note of that date for the sum of $4500.00. Subsequently, on April 5, 1893, Kozel and his wife by quit-claim deed conveyed said premises to Marie Kucaba, who, on April 6, 1893, to secure her three notes, aggregating the sum of $2800.00, executed, with her husband, three separate trust deeds of that date, thereby conveying to said Kozel, as trustee, to secure said last named notes, the said premises, together with another lot, described as lot 3 in block 4. Subsequently, in a cause in the circuit court of Cook county, wherein Charles F. Woolley was complainant, and Marie Kucaba and others were defendants, the three trust deeds, executed by her and her husband, were foreclosed, and a decree of sale was entered, in pursuance of which on June 13, 1898, the master in chancery of the circuit court sold at public sale said lot 2 to the appellee, Jakub Vanek, and issued a certificate of sale to him; and at the same sale and at the same time sold to Charles Vesely said lot 1 (except the east twenty-one feet and five inches thereof), and issued a certificate of sale to him, which latter certificate was subsequently assigned by said Vesely to the appellant, Senft. On September 14, 1899, the master executed a master's deed, conveying said lot 1, (except the portion above named,) to said Senft; and on September 20, 1899,

the master executed to said Vanek a deed to said lot 2, both of which deeds were filed for record.

When Senft and Vanek, appellant and appellee, acquired their titles as aforesaid from the master to lot 1 (except the east twenty-one feet and five inches thereof), owned by Senft, and lot 2, owned by Vanek, said premises were both subject to the deed of trust, executed by Kozel and wife to Greenebaum to secure $4500.00, as above stated. That is to say, the Greenebaum deed of trust for $4500.00 was a common encumbrance upon the lots owned by Senft and Vanek.

On May 18, 1900, said Greenebaum and others, individually, and as trustees, and successors in trust, filed a bill in the superior court of Cook county against said Kozel and wife, and said Vanek and Senft, and others, for the purpose of foreclosing said trust deed for $4500.00. On July 19, 1900, a decree of foreclosure was entered by the superior court, finding that there was due to the complainants, the Greenebaums and others, the sum of $5980.98, and directing that, in default of the payment thereof, the master should sell said lot 2, and all of lot 1 (except the east twenty-one feet and five inches thereof), or so much thereof as might be necessary to pay the amount due the complainants. On August 16, 1900, said premises were sold by the master at public vendue, whereupon the appellee, Jakub Vanek, offered and bid for said lot 1 (except the east twenty-one feet and five inches thereof) the sum of $6178.56, and the master thereupon struck off and sold to said Vanek said lot 1 (except the east twenty-one feet and five inches thereof) for said last named sum, which was the highest and best bid for the premises. The amount, realized from said sale, was sufficient to satisfy the amount due the complainants, including the costs, so that no other part or portion of said premises was offered for sale; and said lot 2, owned by the appellee, Vanek, was withdrawn, and not sold. The sale was reported to the superior court, and approved

and confirmed by it on October 1, 1900. Thereupon, three days after said confirmation, to-wit, on October 4, 1900, the present bill was filed in the superior court of Cook county. The present bill represents that the Greene-baum mortgage or trust deed for $4500.00 was a common lien against that part of lot 1 owned by Senft, and lot 2 owned by Vanek, and that Senft and Vanek were responsible for the payment of said mortgage indebtedness according to the value of their respective lots, and states the respective amounts, which each lot should have contributed towards the payment of the amount due upon the decree of foreclosure, to-wit, $6178.56 with interest.

On July 27, 1900, after the decree of foreclosure on July 19, 1900, in the Greenebaum suit, and before the sale on August 16, 1900, in that suit, Vanek and wife executed to Arthur W. Draper, trustee, and Adolph F. Kramer, successor in trust, a deed of trust, conveying all of lot 1 (except the east twenty-one feet and five inches thereof), and all of lot 2, to secure the payment of the note of said Vanek for $2000.00, dated July 27, 1900, due in five years, and also ten interest coupon notes of $55.00 each. This latter trust deed was made before Vanek had title to said part of lot 1, and is alleged in the bill to have been without consideration, and made with intent to defraud Senft, and against his rights in lot 2 as aforesaid; and the bill charges that said last named trust deed was null and void. The bill makes as parties thereto all of the persons above named, together with the holders of the notes secured by the trust deed from Vanek and wife to Draper, and prays that said last named trust deed may be set aside, and declared null and void as against the rights of Senft; that an account may be taken, and for contribution and subrogation.

Samuel Strauss, claiming to be the owner of the note for $2000.00 secured by the trust deed to Draper, and Draper, trustee, and Kramer, successor in trust, filed a demurrer to the bill on October 29, 1900. Jakub Vanek,

and Anna Vanek, his wife, filed a general demurrer there-
to on November 5, 1900. On December 3, 1900, the supe-
rior court overruled the demurrers of all said defendants.
Jakub Vanek and Anna Vanek, his wife, elected to stand
by their demurrer; and on December 8, 1900, Strauss and
Draper and Kramer filed a joint and several answer. In
this answer all the facts, recited in the bill down to the
acquisition of their titles by Senft and Vanek, were ad-
mitted to be true; it was denied that the premises owned
by Vanek were worth $12,000.00, or that the trust deed
to Draper was fraudulent and void, or that the premises
owned by Vanek and Senft were responsible for the pay-
ment of the common encumbrance, resting upon them
according to their respective values; the answer alleges
that the note, secured by the deed of trust to Draper,
was given to secure a loan of $2000.00, made to Vanek
by Strauss "for the express purpose of enabling said Va-
nek to discharge the indebtedness then resting upon
said lot 2, and secured by said trust deed from said Kozel
as aforesaid;" that from and after July 27, 1900, and up
to August 16, 1900, said Samuel Strauss held said sum of
$2000.00 for the benefit of said Jakub Vanek subject to
said Jakub Vanek's order to be used as aforesaid, and
that on August 16, 1900, said Samuel Strauss paid said
sum of $2000.00 to said Jakub Vanek, and said sum of
$2000.00 was paid by said Vanek to said Wirt E. Hum-
phrey, master in chancery, at the sale of said lot 1 (ex-
cept the east twenty-one feet and five inches thereof), as
aforesaid, the same being a parcel of said sum, so paid
by said Jakub Vanek at said sale of said lot, and being
$2000.00 of the $6178.56, so paid by said Jakub Vanek
as aforesaid; that the entire amount, to-wit, said sum
of $2000.00, remains unpaid and that the trust deed to
Draper, securing the same, was not made for the purpose
of defrauding Senft. The answer admits that, when
Vanek executed said trust deed to Draper, he had no
title to said lot 1 (except the part above named), and

that Vanek and wife did not intend thereby to convey said part of lot 1, but that the same was, by a mistake of the scrivener, inserted therein; that the intention of Vanek was to convey by said trust deed all of lot 2 only, which was at that time owned by him; "and that said sum of $2000.00, having been used by said Vanek in the payment and satisfaction of the indebtedness due upon said lot 2, secured by the trust deed from Anthony Kozel to Moses E. Greenebaum, as aforesaid, said defendant should be subrogated in equity as against said Senft, to the rights of the mortgagees in said case of Henry E. Greenebaum *et al. v.* Anthony Kozel *et al.* in and to lot 2, said lot 2 having thus contributed $2000.00 of the $6178.56 necessary to satisfy the indebtedness, due under said mortgage to said Greenebaum."

On October 28, 1901, a decree was entered by the court, sustaining the validity of the trust deed made by Vanek to Draper to secure $2000.00, and finding that said sum of $2000.00 was paid by Strauss to Vanek and used by Vanek in making his bid of $6178.56 for the purchase of the fractional portion of lot 1 at said master's sale, and that said lot 1, (except the east twenty-one feet and five inches thereof), was included by a mistake of the scrivener, who prepared the deed of trust, contrary to the intention of the parties, and that therefore said portion of lot 1 is not included in the trust deed, and said trust deed is not a lien upon said fractional portion of lot 1. The decree of October 28, 1901, finds that said fractional portion of lot 1 was a strip of land three feet and seven inches in width, and that, when the same was purchased by said Vesely, it was worth the sum of $400.00, and that said lot 2, when originally sold to Jakub Vanek, was worth the sum of $10,000.00 with the buildings thereon; that said fractional portion of lot 1 was subject to the payment of $237.64, being one twenty-sixth of the common encumbrance, and said lot 2 was subject to the payment of $5940.92, being twenty-five twenty-sixths of

the common encumbrance; that by bidding $6178.56 for said part of lot 1 Vanek removed the common encumbrance from lot 2, so as to make it rest entirely upon said portion of lot 1; that, by paying the amount of his bid, to-wit, $6178.56, Vanek received a master's certificate of sale; that into this certificate is merged the entire encumbrance, formerly resting upon said lot 2 and said fractional portion of lot 1; "that instead of Senft's portion of lot 1 being subject to the payment of $237.64, the sale and certificate of Vanek operated to subject said fractional portion of said lot 1 to the payment of $6178.56, in order to redeem from said sale; that said Senft has not lost his land, nor has he paid any money, and, therefore, is not entitled to contribution; that said Senft should be permitted to redeem his said land from this particular certificateholder, the said Jakub Vanek, upon paying $237.64, the equitable share of the common encumbrance resting upon his said strip, together with lawful interest, and no more, had he elected so to do; that the equity of redemption, remaining in said Senft, is inconsistent with the theory of an absolute sale; that the bid of said defendant, Vanek, cannot be treated as if it were the bid of a third person, not interested in the premises encumbered, and as if the said sum of $6178.56 were paid simply for the value of the land, owned by Senft." The decree then fixes the master's fees at a certain sum, and decrees that the trust deed from Vanek and wife to Draper be declared null and void, and of no effect, so far as it affects lot 1 (except the east twenty-one feet and five inches thereof), but adjudges the trust deed to be a good and valid and subsisting lien upon said lot 2 only; and the decree thereupon dismisses the bill of complaint for want of equity and concludes with this provision: "Nothing in this decree shall in anywise affect the rights of Vanek or Senft with reference to lot 1."

On November 1, 1901, an order, theretofore entered dismissing the bill as against Vanek and his wife, was

set aside, and leave was given to Senft, the complainant below, to file an amendment to his bill, and a rule entered upon Vanek and his wife to plead, answer or demur to the bill as amended; and this order recites that it was entered over the objection of counsel for defendant, Vanek. On November 27, 1901, pursuant to leave so granted by the court, an amendment was filed to the bill by Senft substantially in pursuance of the findings, so as above made in the decree of October 28, 1901, and alleging that said fractional part of lot 1, owned by Senft, was only worth $400.00, and that lot 2 owned by Vanek was worth $10,000.00, and that Vanek should have contributed towards the payment of said sum of $6178.56, twenty-five twenty-sixths thereof, and Senft should have contributed only one twenty-sixth of said sum, such being the relative values, which their premises bore to the amount due under the decree with costs; that is to say, said part of lot 1, owned by Senft, was subject to the payment of $237.64, and lot 2 owned by Vanek was subject to the payment of $5940.92; that in law said Senft is only entitled to redeem from said sale by tendering and paying to the master, who made such sale the full amount realized from the sale for said portion of lot 1 to said Vanek, as above stated, to-wit, the sum of $6178.56; that Senft has not the money with which to redeem said property and is unable to pay said sum with interest from the time of sale, and to require him so to do would result in the loss of all his right in and to said premises, and that thereby a great injustice would be entailed upon him; that Vanek, in bidding an amount representing twenty-five times the value of said fractional portion of lot 1 owned by Senft, was actuated in so doing by malicious and evil motives, and that said bid was a fraud upon said Senft, and made for the purpose of preventing and depriving him from exercising the right, secured to him by the law, of redeeming from said sale, and also for the purpose of unlawfully securing to Vanek the title to said por-

tion of lot 1, owned by Senft. The bill as thus amended alleges that the trust deed to Draper is absolutely null and void as against the rights of Senft in said portion of lot 1. The prayer of the bill, as thus amended, is that Senft may be allowed to redeem said portion of lot 1 by paying Vanek, or the master, the sum, for which the lot was in law and equity responsible as its proportion of said common encumbrance, to-wit, the sum of $237.64, with interest from August 16, 1900, which sum orator avers he is ready and willing to pay and tenders to said Vanek; that, upon making said payment, Vanek, as the holder of said master's certificate, be ordered to execute to Senft a quit-claim deed of all his interest in said portion of lot 1, and, in the event of his failing to do so, that the master in chancery be directed to issue to Senft a certificate of redemption as to said part of lot 1, upon payment to the master of $237.64 with interest as aforesaid; and for such other and further relief as equity may require. On December 13, 1901, Vanek and his wife filed their general demurrer to the bill, as so amended. On January 13, 1902, the defendants below moved to strike the amendment from the files, but this motion was overruled. The demurrer, however, was sustained and leave given to the complainants to file an amended bill instanter, to which the defendants were ruled to plead, answer or demur within ten days.

Thereupon, on January 13, 1902, Senft filed an engrossed amended bill, alleging that the decree of sale entered on July 19, 1900, in said foreclosure proceeding of *Greenebaum* v. *Kozel* was a lien on both lot 2 and said fractional portion of lot 1; that by said decree the indebtedness against said lots was not apportioned according to the relative shares, for which each of said lots was properly chargeable in equity. The prayer of the engrossed amended bill was that the purchase by Vanek at the master's sale on August 16, 1900, should be decreed to be a payment by Vanek of the lien upon lot 2 and said

portion of lot 1 of said decree of July 19, 1900, and that, so far as Vanek paid more than the proportion equitably resting upon lot 2, as between him and Senft, the excess should be decreed to be a lien upon said fractional part of lot 1, and Vanek subrogated to the lien of said decree to that extent only so far as said part of lot 1 is concerned; that Senft be permitted to pay such portion with lawful interest to Vanek, and that, upon such payment, the sale of August 16, 1900, may be set aside and vacated, and the decree of July 19, 1900, be satisfied, and the lien thereof discharged, so far as said part of lot 1 is concerned; that, upon making said payment, Vanek be ordered to surrender his master's certificate to Senft, or to execute to him a quit-claim deed of his interest in said part of lot 1, or that the master be ordered to issue to Senft a certificate of redemption as to said part of lot 1. On January 18, 1902, a general demurrer was filed by Vanek to the engrossed amended bill; and, on February 3, 1902, an order was entered, sustaining said demurrer and dismissing the bill for want of equity. It is from said last named decree, so dismissing the bill, that an appeal was taken to the Appellate Court, where the decree of the superior court was affirmed.

Charles Vesely, A. Morris Johnson, and Charles T. Farson, for appellant.

Mancha Bruggemeyer, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

Upon reading the statement of facts, which precedes this opinion, no other conclusion can be reached than that the appellant, Senft, by trickery, if not by fraud, has been deprived of his statutory right of redemption. The Greenebaum mortgage, or trust deed, was an encumbrance, which rested both upon lot 1 (except the east twenty-one feet and five inches thereof), and lot 2, the

former belonging to Senft, and the latter to Vanek. In other words, the two properties of appellant and appellee were subject to the Greenebaum mortgage for $4500.00. Appellant and appellee acquired title to their respective lots at the same time, that is to say, each obtained a master's deed to his property in pursuance of a sale, foreclosing trust deeds, which were second mortgages, subject to the Greenebaum mortgage. When they bought their respective lots, the Greenebaum mortgage rested upon them as an encumbrance, and they were both subject thereto.

In *Carpenter* v. *Koons*, 20 Pa. St. 227, it was said by the Supreme Court of Pennsylvania, speaking through Chief Justice Black: "Two purchasers at a sheriff's sale, subject to a mortgage which is a common encumbrance on the land of both, stand on a level. Neither of them has done or suffered anything, which entitles him to preference over the other. Equality is equity. They must pay the mortgage in proportion to the value of their respective lots." In 19 Am. & Eng. Ency. of Law, (2d ed.) p. 1280, it is said: "Where lands subject to an encumbrance are sold in parcels to different purchasers at the same time, all the purchasers must contribute ratably toward the discharge of the common encumbrance,"—citing *Chase* v. *Woodbury*, 6 Cush. 143; *Brown* v. *Simons*, 44 N. H. 475; *Ex parte Merriam*, 4 Denio, 254; *Alley* v. *Rogers*, 19 Gratt. 366; *Rodgers* v. *McCluer*, 4 id. 81; 47 Am. Dec. 715. In *Sawyer* v. *Lyon*, 10 Johns. 32, it was held that "where two persons purchase separate parcels of a lot of land previously mortgaged, and one of them afterwards pays more than his share of the mortgage money, in proportion to the part of the lot owned by him, he may call on the other for contribution of his aliquot share, or such part of it as has been so paid." The proofs show, in the case at bar, that the portion of lot 1 owned by Senft, which was a strip of land only three feet and seven inches in width, was worth $400.00, and that lot 2, owned by

Vanek, with the buildings thereon, was worth $10,000.00. Upon the principle that equality is equity, appellant and appellee were under obligations to pay the Greenebaum mortgage, resting upon their respective lots, in proportion to the value of such lots. As between themselves they were under obligation to contribute ratably towards the discharge of the Greenebaum trust deed, which was a common encumbrance. The record shows that the proportion of the encumbrance, which was justly payable by the appellant, was $237.64, and the proportion thereof, which was justly payable by the appellee, was $5940.92. When the sale under the foreclosure of the Greenebaum trust deed was made on August 16, 1900, Vanek, one of the defendants with Senft in that foreclosure proceeding, and being under obligation to pay his proportion of the mortgage, bid for the part of lot 1, owned by Senft, the whole amount of principal and interest, due by the terms of the decree, to-wit, $6178.56. Inasmuch as, by this bid, the whole debt, found due by the decree, was paid off, it was unnecessary for the master to sell lot 2, belonging to Vanek, and that lot was freed from the lien of the decree, and was saved to Vanek without sale.

As appellant's lot was only worth $400.00, there could be no object in his paying $6178.56, together with statutory interest, for the purpose of redeeming the same. No man would consent to pay $6178.56 in order to redeem a lot, which was worth only $400.00. The whole matter was so ingeniously managed by Vanek, that appellant's right of redemption was substantially cut off, because made worthless.

It is said that the appellant should have presented his objections to the sale when the master made his report of sale, and when such report of sale came up for confirmation. The report of sale was approved on October 1, 1900. It is true, as a general rule, that a complaint as to the character of a master's sale, or as to the mode of bidding thereat, should be made upon the

coming in of the master's report of sale for confirmation. But the present bill was filed October 4, 1900, only three days after the order approving the sale, and it was filed in the superior court of Cook county, the same court in which the foreclosure proceeding, wherein the sale was made, was pending. Both the foreclosure proceeding, begun by the Greenebaums, and the present bill to redeem from the sale, were pending in the same court, and the application, embodied in the present proceeding, was filed in the court only three days after the report of sale was confirmed. Under these circumstances we are of the opinion that appellant was not too late in calling the attention of the court to the character of the sale, as to the manner in which the property was struck off.

The appellee, Vanek, has assigned cross-errors, alleging that the court below erred in permitting the appellant to amend his original bill, and to file an amended bill. It has always been held in this State, that the question of amendments in chancery proceedings is one, which is very largely in the discretion of the court. We are not prepared to say that the discretion was abused in this case.

The decree of sale under the Greenebaum foreclosure was entered on July 19, 1900. A little more than a week thereafter, to-wit, on July 27, 1900, Vanek executed a trust deed to one Draper to secure $2000.00 upon lot 1 (except the east twenty-one feet and five inches thereof), and all of lot 2. This trust deed was executed some twenty days before August 16, 1900, when the foreclosure sale took place. It is admitted in the answers that the execution of the trust deed to Draper was for the purpose of borrowing $2000.00 to be paid upon the bid to be made on August 16, 1900, by Vanek for said part of lot 1. Lot 2 was thus made to furnish at least $2000.00 towards the coming bid of $6178.56. Lot 2 was thus made to furnish a portion of the money, necessary to pay the amount due by the decree, not by offering the same at the sale

under the decree as the decree of foreclosure provided, but by the execution of a mortgage by the defendant, Vanek, in advance of the sale. If, when the sale came off, and the part of lot 1 owned by appellant was first offered for sale, $4178.56 only had been bid, it would have been necessary to offer lot 2 for sale, in order to raise the remaining $2000.00, necessary to pay the whole amount due upon the decree. By mortgaging lot 2 in advance of the sale, it was made to pay the $2000.00 in a different way and by a different process, but so as to seriously impair appellant's right of redemption, and seriously increase the burden resting upon his property. It is admitted in the answers that this $2000.00 was retained by the owner of the money between July 27, when the trust deed securing it was executed, and August 16, 1900, when the sale was made, and was only handed over to be paid upon the bid upon the day of sale itself.

When Vanek executed the trust deed to secure the $2000.00 to Draper, Draper or Strauss, owning the note for $2000.00, secured by the trust deed, stood in the attitude of a purchaser *pendente lite.* Draper, the trustee, or Strauss, the holder of the note, took whatever interest they obtained in lot 2, subject to the lien of the decree of sale, owned by the mortgagees, the Greenebaums; and if lot 2 had been sold to a third party at the master's sale, the purchaser of lot 2 would have taken the property freed from the lien of the trust deed to Draper. The decree of sale ordered that lot 2 be sold, not that lot 2, subject to a trust deed for $2000.00, should be sold. Strauss and Draper were thus interested in having the whole amount due upon the trust deed bid upon the part of lot 1 owned by Senft, because thereby the lien of the trust deed for $2000.00 was kept intact and prevented from being annihilated by the sale. The parties, interested in the encumbrance for $2000.00, were interested in preventing lot 2 from being offered for sale at all. Thus, in advance of the sale, the scheme, concocted by these

parties, interfered with the proper conduct of the sale, and prevented competition at the sale. No third party would bid more than $6178.56 for the part of lot 1, owned by Senft, because it was only worth $400.00. When, therefore, Vanek bid that amount there was an end of the sale. Vanek, co-defendant with Senft, was the only person, who could be benefited by bidding for the fractional lot 1 so much more than it was worth. It is a singular fact that the encumbrance to Draper, securing the $2000.00, was executed not only upon lot 2, but also upon lot 1 (except the east twenty-one feet and five inches thereof). After the sale was made, and the answers were filed, it was alleged that the insertion of the description of said portion of lot 1 in the trust deed to Draper was a mistake, and that there was no intention of creating a lien upon said part of lot 1.

We pause not to discuss the question whether the doctrine of contribution, or the doctrine of subrogation, has any application to the present case. A court of equity will not permit a fraud or a trick to deprive a party of his right under the statute to redeem his property at a reasonable figure, and at a figure somewhere in the neighborhood of the real value of the property. It never could have been the intention of the statute that one defendant should pay so much for the property of his co-defendant, when both of their properties were subject to the same encumbrance, that such co-defendant would be virtually deprived of the power to redeem his property. We think that the decree, entered by the court on October 28, 1901, fixing upon $237.64 as the proper amount of the encumbrance to be paid by appellant, was correct.

If, before the sale, Vanek, owning lot 2 worth $10,-000.00, had gone into court and paid off the whole amount due upon the decree, to-wit, $6178.56, so as to prevent a sale, he would have had a right to demand of Senft that he should pay to him $237.64, being the proportion of the indebtedness, which it would be the duty of the appellant

to pay according to the value of his lot, as compared with the value of the appellee's lot and with the amount due upon the decree. In view of the manner, in which the sale was conducted, and in view of the bid made by Vanek, co-defendant with Senft, the sale here was nothing more than a payment of the whole amount of the mortgage by Vanek, but a payment made in such a way as to take away from the appellant his property, and prevent the exercise of the right of redemption.

For the reasons above stated, we are of the opinion that the court below erred in dismissing the bill for want of equity. Accordingly, the decree of the superior court of Cook county, and the judgment of the Appellate Court affirming that decree, are reversed, and the cause is remanded to the superior court with directions to proceed in accordance with the views herein expressed.

*Reversed and remanded.*