FRANK J. TAYLOR, Appellee, *vs.* ALBERT C. TAYLOR, Appellant.

*Opinion filed October 28, 1913.*

1. PLEADING—*allowing amendments in chancery is largely matter of discretion.* Section 37 of the Chancery act authorizes the chancellor to permit the amendment of bills upon such terms as he deems proper, and the allowance of such amendments is a matter resting largely in his discretion.

2. SAME—*when allowing amended bill to be filed after hearing before master is not error.* Allowing an amended bill to be filed after the master has taken the evidence is not an abuse of the chancellor's discretion even though there may be some repugnancy or inconsistency between the amended and the original bills, where the original bill was not sworn to, the repugnancy or inconsistency is not substantial, and the principal facts alleged and the relief prayed in the two bills are not materially different, so that no prejudice or injury could have resulted to the defendant.

3. RESCISSION—*when the complainant need not actually tender amount received.* Where the complainant in a bill to set aside a deed claimed to have been obtained by fraud and misrepresentation of the grantee offers to return the consideration received and seeks a money decree for more than the amount of such consideration for his interest in some of the lands covered by the deed, which the grantee, by conveying them to a third party, has put beyond his power to restore, the court may, in its decree, protect the rights of the defendant with respect to such consideration, and no actual tender is necessary.

4. FRAUD—*when grantee in deed has burden of proving good faith.* One who, as administrator of his father's estate, is familiar with the amount and value of the estate must act fairly in purchasing for himself the interest of a brother who is ignorant of the facts, and when the transaction is attacked by the grantor for fraud and misrepresentation by the grantee, the latter has the burden of showing that he acted in good faith and that the transaction was an equitable one and beneficial to the grantor.

5. APPEALS AND ERRORS—*what does not justify a reversal because of the master's findings as to value.* The fact that the master in chancery found the value of two of the parcels of land in dispute to be as testified to by witnesses who named the highest value, and as to other parcels at a higher value than would result from averaging the values testified to, does not justify reversal of the decree upon the ground that the master's findings as to value were not supported by the evidence.

APPEAL from the Circuit Court of Henry county; the Hon. FRANK D. RAMSAY, Judge, presiding.

Appellee, Frank J. Taylor, and his mother, Deborah Taylor, filed their bill in the circuit court of Henry county to set aside certain deeds executed by the appellee to his brother, Albert C. Taylor, appellant, and for other relief.

John H. Taylor, the father of appellant and appellee, resided in Henry county, Illinois, and died intestate June 4, 1898. He left surviving a widow, Deborah Taylor, who died since this litigation was begun; a daughter, Mary E. Glyde; and three sons, appellant, appellee and James G. Taylor, his only heirs-at-law. At the time of his death John H. Taylor owned 160 acres of land in Henry county,

known as the home farm, 400 acres of other farm land in said county, some lots in the village of Wethersfield, in said county, and 100 acres of farm land in Dallas county, Iowa. His personal estate was inventoried at over $20,000. Appellee was indicted in Henry county for a criminal offense and entered into a recognizance in the sum of $1500, with his father as security, for his appearance to answer to the indictment. About February 1, 1898, he departed from the State of Illinois and forfeited his recognizance, which was paid by his father. After the death of John H. Taylor, upon the petition of his widow, appellant was appointed administrator of the estate. The inventory lists among the assets of the estate $10,400 in notes and claims against appellee and his wife, Edna Taylor. Suits were brought on some of these claims against the appellee and attachments levied upon his interest in his father's lands in this State. Judgments *in rem* were obtained, with orders for special executions against the lands attached, but no sale was ever made. A personal judgment was obtained against Edna Taylor upon a note for $450, and personal service was had upon her and judgment obtained against her in some of the suits, in which her husband was not served personally. A judgment by confession was obtained against appellee and his wife upon a judgment note for $3800. No effort appears to have been made to collect any of these judgments by a sale of property. In the fall of 1903 appellant contracted for the interest of his sister in the lands and personal estate of their father and agreed to pay her $14,000 therefor. He paid her $6000 in cash and gave her his note for $8000, with an agreement that if he would convey his sister a good title to the Iowa lands she would surrender to him the note. Appellant, learning that appellee was in San Francisco, California, entered into a correspondence with him, and in December, 1903, went to San Francisco to see him. On December 3, 1903, in the city of San Francisco appellee executed to appellant, for the expressed con-

sideration of $500, a quit-claim deed for all his interest in his father's lands in Illinois, particularly describing them. The deed recites that the grantor conveys and assigns to the grantee, with full power to receive and receipt for the same, all interest in the estate of John H. Taylor, deceased. On the same day, for the expressed consideration of $2000, appellee conveyed to appellant his undivided one-fourth interest in his father's lands in the State of Iowa. While not so recited in the deeds, a part of the consideration for the conveyance was the agreement of appellant to assume and pay all indebtedness of appellee and his wife, Edna, (who had then been divorced from him,) to the estate of John H. Taylor. Subsequently appellant conveyed his interest in the home farm to his brother James, and James conveyed his one-fourth interest to appellant in all the other lands owned by John H. Taylor at the time of his death. Appellant thereupon conveyed to his sister, Mary E. Glyde, the whole of the Iowa lands, whereupon she surrendered to him his $8000 note.

In the fall of 1905 appellee returned to Illinois, and in the spring of 1906 he and his mother filed the original bill in this case. The bill alleged that the pretended deed from appellee to appellant for the Illinois lands was a fraud; that when appellant visited appellee in San Francisco and talked about securing the deeds he stated he desired them for the purpose of making some settlement with Mary E. Glyde, and it was agreed between the parties that appellant should pay certain notes of appellee and his former wife due the estate, amounting to $9000, in consideration of which appellee agreed to convey to appellant his interest in the Iowa lands and the home farm. The bill alleges appellant represented at the time that the indebtedness of appellee and his wife to the estate amounted to over $23,000; that appellee had not had communication with Edna Taylor for a long time and knew nothing of her transactions with his father but was led to believe by appellant that she had bor-

rowed large sums of money from said John H. Taylor, and appellee, being desirous of paying all such indebtedness, agreed to convey his interest in the Iowa lands and the home farm in order to procure the liquidation and settlement of his and Edna Taylor's indebtedness to John H. Taylor. The bill further alleges that the statements of appellant were false; that Edna Taylor had only borrowed $450; that appellant also represented that the estate of John H. Taylor, both real and personal, was worth about $40,000 and there was indebtedness against it to the amount of $20,000; that he also represented the lands had depreciated in value after the death of John H. Taylor, and further represented that payment to appellee of $500 for his interest in the Iowa lands and the home farm was a fair and equitable settlement, whereas the truth is the estate of John H. Taylor was worth in the neighborhood of $80,000 above all indebtedness. The bill further alleges that appellant had prepared two deeds, one describing the Iowa lands and one the home farm in Illinois; that appellee read them and agreed to sign them; that they went to the office of a notary public, where appellant produced two deeds, which appellee signed without further reading or examination, and he alleges that if he signed any such a deed as was recorded in the recorder's office of Henry county it was presented to him suddenly in place of the deed for the home farm, which he supposed it to be when he signed it and which he read before going to the notary's office and which described the home farm only; that he never to his knowledge signed the deed recorded in the recorder's office and that it was obtained by appellant by fraud, for the purpose of defeating the rights of appellee. The bill further alleges that the indebtedness of appellee and Edna Taylor was put in judgments and has never been paid or satisfied. The bill contains many other allegations, but the foregoing are sufficient to show the grounds upon which it is based. The prayer

is that the deeds be set aside and the appellant be required to account for the income received from the land, etc.

Appellant was defaulted at the return term after service obtained, which he claimed was due to the fault or neglect of his counsel, and the cause was referred to the master to take proof and report. The master proceeded to take testimony, and appellant employed other counsel, who obtained an adjournment of the hearing before the master until he could appear before the court at the November term, 1906, and move the court to set aside the default and for leave to answer. The motions were made at the November term and taken under advisement. At the May term, 1907, before the motions had been passed upon, counsel prepared and moved for leave to file a supplemental answer also. Both motions were denied and the taking of testimony was resumed before the master in October, 1907. Appellant was summoned before the master as a witness and testified fully as to all the matters and things alleged in the bill. The testimony was completed in May, 1908, and the master reported at the November term his findings and conclusions. By that report he found that appellant, as administrator of the estate of John H. Taylor, took charge of all the property, real and personal, of the estate, and collected rents from the lands, money due the estate and to a certain extent paid off debts; that he mingled the funds of the estate with his own and made no attempt to keep a separate account of the estate's funds. He further found that at the time the deeds sought to be set aside were executed, appellant stated to appellee that the estate of their father was largely in debt; that the entire estate was worth but little more than $20,000 after the debts were paid, and that the lands of their father had depreciated in value since his death, all of which statements were false; that in consideration of the payment of $500 and the agreement of appellant to cancel certain indebtedness of appellee and his former wife, the amount of which was grossly and fraudu-

259 — 34

lently overstated, appellee, relying upon appellant's statements, conveyed to appellant his interest in the lands of their father and also in the personal estate. The master further found that appellant had not paid or satisfied the indebtedness of appellee and Edna Taylor; that appellant occupied a fiduciary and confidential relation to appellee; that appellant was in a position, and it was his duty, to know the truth or falsity of the representations made about the value of the estate of John H. Taylor, and that the personal estate, exclusive of debts, amounted to more than $20,000.

Exceptions were filed by appellant to this report, and after hearing arguments upon them the court referred the cause back to the master, with directions to make more specific findings and with leave to take further evidence. Thereafter further evidence was heard by the master, and at the March term, 1909, he filed a second report. In this report the master substantially repeated his former finding that the deed was procured by fraudulent and false representations made by appellant to appellee as to the value of the estate of their father and of the indebtedness of appellee and his former wife to said estate, and that the consideration for the conveyances was grossly inadequate. The master found that the indebtedness of appellee and his former wife, including principal and interest, amounted to $12,751.81, and that upon a settlement of the estate appellee was entitled to $2125.30 as his share of the personal estate, which would leave him actually owing the estate $10,626.51; that this sum, together with the $500 paid by appellant at the time the deeds were made, was the full consideration agreed to be paid for said conveyances. The master further found that the total value of all the lands of the estate at the time the deeds were made was $72,400, and that the interest of appellee in the land at that time was $15,400. He further found that appellee's interest in the rents collected by appellant up to December 3, 1903,

after deducting costs and expenses, was $3680.51, making the total value of appellee's interest in the lands, and the rent up to that time, $19,080.92, and that the consideration agreed to be paid by appellant for appellee's interest was the $500 cash paid and the indebtedness of appellee and Edna Taylor to the estate, together amounting to $11,- 126.51. The master further found that the conveyances were obtained by appellant by fraud and misrepresentation and the flagrant abuse of confidential relations and should be set aside and declared void.

Before exceptions which were filed by appellant to this report were heard he renewed his motions to set aside the default and for leave to answer the bill. These motions were denied, and at the June term, 1909, the cause was heard upon the exceptions to the master's report and taken under advisement by the court. At the November term, 1909, and before the court had rendered any decision, ap- pellee asked and was granted leave to file an amended and supplemental bill. At the February term, 1910, appellant demurred to the amended and supplemental bill, and the demurrer was sustained because the widow was not a proper party complainant. Appellee thereupon asked and obtained leave to file a second amended and supplemental bill mak- ing the widow a party defendant. This bill sets out the fiduciary relation existing between the parties and at great length the alleged fraudulent statements and representations of appellant as to the value of the estate of John H. Tay- lor and of the indebtedness of appellee and his wife to the estate; that the indebtedness had materially increased by loans to Edna Taylor after appellee left the State; that appellee told appellant he did not know anything about the facts in relation to these matters and would have to de- pend upon appellant dealing fairly with him; that appellant promised, as soon as he returned to Illinois, to send appel- lee copies of the inventory, appraisement bill and reports relating to the estate, which would show the truth of ap-

pellant's representations, and he also promised to send all of appellee's and Edna Taylor's notes, canceled and stamped paid, but he failed to send any of said documents or papers. The bill further alleges that by reason of the fiduciary relation between the parties and through the false and fraudulent representations of appellant he was induced to make the conveyances of his right and interest in the estate and property of his father, and the income therefrom, for a consideration grossly inadequate, to-wit, for less than one-half what appellee's interest was worth. It is alleged that since the execution of the deeds by appellee to appellant the latter has conveyed the home farm to his brother James and the Iowa lands to his sister. The bill recites efforts made by appellee to have a settlement and adjustment of the matter with appellant but that appellant refused to settle or talk about a settlement. By way of supplement to the amended bill it was alleged that appellant had, as administrator, since the commencement of this suit, brought two suits, one in the circuit court of Rock Island county and one in the circuit court of Henry county, upon notes of appellee which appellant had agreed to pay, cancel and return to appellee when the conveyances were made, and had reported as uncollectible a note of Edna Taylor which he had agreed to pay. The bill prays substantially the same relief as the original bill, except that by reason of the home farm and the Iowa lands having been conveyed to innocent purchasers by appellant, it prays appellant be decreed to pay appellee the value of his interest therein in money.

Appellant moved to dismiss this bill on the ground that it was repugnant to and contradictory of the original bill, abandons the ground taken in the original bill and sets up new ground for relief. This motion was overruled and appellant demurred to the bill, assigning as grounds of demurrer substantially the same grounds set out in the motion to dismiss, together with other reasons. The demurrer was overruled and appellant answered the amended bill

at the November term, 1910. The answer denied all the material allegations of the bill as to fraud and misrepresentation as to the value of the estate and the amount of the indebtedness of appellee and Edna Taylor to the estate. Appellant also asked for the appointment of a special master. This was denied and the cause re-referred to the master, with directions to take such further testimony as the parties might desire and to report his conclusions of law and fact. Under this order of re-reference appellant appeared before the master and testified at great length, his testimony as abstracted covering sixty pages. The third report of the master was not substantially different from the second report. Exceptions by appellant to the third report were overruled and it was approved and confirmed.

The decree finds that appellant misrepresented and deceived appellee as to the value of his father's estate and the amount of appellee's and Edna Taylor's indebtedness thereto, and took advantage of the confidential relation existing between him and appellee to fraudulently induce appellee to convey his interest in his father's estate to appellant for about $8000 less than it was worth. It is therefore ordered that said deeds be set aside except as to the home farm and the Iowa lands and held as null and void; that appellee be re-invested with all his rights in said lands except the home farm and Iowa lands, with a right to the rents and profits thereof, in so far as they had been taken by appellant. The decree further finds appellee is entitled to a partition of said premises and to an accounting as in said decree directed, and for the payment, in money, of the value of his interest in the home farm and the Iowa lands. This appeal is prosecuted from that decree.

ROBERT C. MORSE, and CHARLES E. STURTZ, (CHARLES B. MARSHALL, of counsel,) for appellant.

NELS F. ANDERSON, and JAMES H. ANDREWS, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

It is earnestly insisted that the court committed reversible error in permitting appellee to file an amended bill. The basis of this contention is, that the amended bill is inconsistent with and contradictory of the original bill, alleges a different state of facts as a ground for recovery, and was not filed until after appellee had testified before the master in support of his bill. The original bill, after setting out the visit of appellant to appellee in California and the representations made by him as to the value of their father's estate and the amount of the indebtedness of appellee and Edna Taylor to said estate, alleges appellant offered to give appellee $500 and pay his and Edna Taylor's indebtedness for a conveyance of appellee's interest in the Iowa lands and the home farm. This occurred in the evening before the deeds were executed the next morning, and appellant then produced two deeds, one of them containing a description of the home farm, the other a description of the Iowa lands. The original bill alleges that appellee then read the deeds and agreed to sign them; that when they went to the notary public's office appellant produced two deeds, which appellee signed without again reading or examining, and the bill alleges that if he signed the deed conveying his interest in all the Illinois lands it was presented to him suddenly in place of the deed to the home farm, which he supposed it to be, and that he had never to his knowledge signed the deed appellant had placed on record and which purported to be a conveyance of all appellee's interest in the Illinois lands. The amended bill sets out with somewhat greater detail the alleged fraudulent statements and representations of appellant as to the value of the estate of John H. Taylor and the amount of the indebtedness of appellee and Edna Taylor; that he represented to appellee his interest in his father's estate was not worth $500, but in order to adjust and settle the affairs of said estate he offered to pay appellee that sum in cash and as-

sume and pay the obligations of appellee and Edna Taylor to the estate, in consideration of which appellee executed the two deeds conveying all his interest in and to the estate of John H. Taylor, including the rents and profits, and interest therefrom up to the time the deeds were made.

The original bill was not sworn to, but appellant contends that it should be treated upon this question the same as if it had been sworn to, because appellee testified fully in its support before the master and did not again testify after the original bill was filed. We do not agree with this contention. But even if the rule applicable to the amendment of sworn bills applied, we think allowing the amendment could not be held to be reversible error. Section 37 of the act to regulate practice in courts of chancery authorizes courts to permit the amendment of bills upon such terms as may be deemed proper, so that neither party be surprised or unreasonably delayed thereby. It has always been held in this State, and generally, we believe, elsewhere, that amendments in chancery proceedings are largely within the discretion of the court. Such amendments are often necessary to the proper administration of justice, but the court may impose terms where deemed necessary. (*Senft* v. *Vanek,* 209 Ill. 361; *Gordon* v. *Reynolds,* 114 id. 118; *Booth* v. *Wiley,* 102 id. 84; *Hoyt* v. *Tuxbury,* 70 id. 331.) Amendments to bills not sworn to are allowed with greater liberality than to sworn bills. Where the bill is sworn to, a complainant may be denied the right to amend by contradicting the facts sworn to, unless he can show the statement was a mistake. (*Fowler* v. *Fowler,* 204 Ill. 82.) Where an amended bill sets up a state of facts which, if true, would entitle the party to the same relief prayed in the original bill but different from the facts alleged in the original bill, and of such a nature that they must have been known to complainant when the original bill was filed, this may be considered in determining whether the facts stated in the amendment are true; (*Calkins* v. *Calkins,* 220 Ill. 111;)

but unless permitting the amendment amounts to an abuse of discretion it will not constitute reversible error. In *Hardie* v. *Bulger,* 66 Miss. 577, it was held that an amendment to a bill for the cancellation of a mortgage for certain alleged reasons was permissible which set up other and even inconsistent reasons upon which the same relief was prayed. In *Ingraham* v. *Foster,* 31 Ala. 123, a bill was filed to settle a partnership in a steamboat and ascertain the complainant's share of the profits. The bill alleged the complainant had sold his interest in the boat to a third person, who was entitled to his share of the profits. The bill was amended, the amendment alleging that the transfer, though absolute in form, was, in fact, only a mortgage, and it was held the amendment was properly allowed. Here no injury or prejudice resulted to appellant from the amendment. While it is true he was defaulted under the original bill, he was called as a witness by appellee and testified before the master, and after the amended bill was filed he answered it, appeared before the master and testified fully upon the charges and allegations therein and introduced all other competent testimony he desired to offer. The only real difference between the facts alleged in the original and amended bill is the allegation in the original bill of the agreement of appellee to convey only his interest in the home farm and the Iowa lands and the substitution by appellant of another deed for the one appellee had read the evening before the deeds were executed. The allegations of the fiduciary relation between the parties, the false and fraudulent representations of appellant and the ignorance of appellee as to their truth are substantially the same in both bills and the relief prayed in them is not materially different. Appellee did not change his testimony in any respect after filing the amended bill, for he did not testify again after filing it. The repugnancy or inconsistency of the allegations in the amended bill with those in the original bill were not of a character that allowing the amendment

can be said to be such an abuse of the discretion of the court as to require a reversal of the decree. A refusal to allow the amendment would have presented a much more serious question.

It is further insisted that as a condition of the relief prayed appellee was required to tender back to appellant, before bringing the suit, the $500 paid at the time the deeds were executed. We do not understand this case belongs to the class of actions for rescission where the party bringing the suit is required to offer to restore the other party to *statu quo* before commencing the suit. Appellant had, before the bill was filed, conveyed the home farm to his brother James and the Iowa farm to his sister. The bill recognized appellee was not entitled to rescission as to those lands, but prayed a money decree for his interest in said lands and for rescission as to the other lands and the personal estate. This he was authorized to do. (*Preston* v. *Spaulding,* 120 Ill. 208.) If appellant had retained title to all the land and the bill had sought rescission *in toto,* then there would have been better reason for the requirement that he offer to restore the benefits he had received before commencing his action. Here, however, appellant had made complete rescission impossible by conveying a part of the lands to innocent purchasers. Appellee asked, as he lawfully might do, that appellant be decreed to pay him in money the value of his interest in the lands so conveyed. The bill does not allege an actual tender of the $500, but alleges appellee had repeatedly offered to return the same to appellant, with interest, if appellant would re-convey to him his interest in his father's estate, and the rents, conveyed by appellee to appellant, "and is now willing to return the said $500, as aforesaid, if the said Albert will restore to him his rights and interests in said property, as aforesaid." If appellee was entitled to the relief prayed, appellant could be as effectually protected by giving him credit on the money decree rendered as if he had been

tendered that sum before the bill was filed. In Pomeroy's
Equity Jurisprudence (vol. 6, sec. 688,) the author says:
"In cases of fraud, if the defendant's act has prevented a
complete restoration of the *status quo,* he cannot, in jus-
tice, urge this fact as a defense to the rescission.   *   *   *
Neither is a party obliged to return that which he will be
entitled to retain even though cancellation be decreed." The
author further says that many courts, in dealing with the
question of rescission, have completely lost sight of the dis-
tinction between the equitable remedy and the legal remedy
of rescission, and points out why the rule requiring an
offer to place the defendant *in statu quo* before bringing
suit is not of universal application in courts of equity, and
says insistence upon it in equitable proceedings would often
work a complete denial of justice. The author of the chap-
ter on "Cancellation of Instruments" in 6 Cyc. says there
is no little confusion upon this question among cases in the
same jurisdiction. After stating that the numerical weight
of authority slightly favors the rule that restoration, or an
offer to restore, must be made before suit brought, the au-
thor says (p. 313) : "On the other hand, the courts of many
States have held, in numerous well considered cases, that
no offer of restoration before bringing suit is necessary.
These courts advert to the distinction, so often lost sight
of, between the equitable remedy of rescission or cancel-
lation, where the avoidance of the contract, with its in-
dispensable adjunct of restoration, is accomplished by the
decree of the court, and legal rescission, where the act of
plaintiff in avoiding the contract re-invests him with his
legal title or right to sue, and must therefore be accom-
panied with restitution of the thing received by him." In
a note to the text it is stated that a careful examination
of the cases where the general rule was applied and no ref-
erence made to any exception to it, shows that the courts
did not have their attention directed to the distinction be-
tween the legal and equitable aspects of rescission. In

*Brown* v. *Norman*, 65 Miss. 369, (7 Am. St. Rep. 663,) in a well considered case the court explains the distinction between actions for rescission at law and in equity in the application of the rule requiring an offer to place the defendant *in statu quo* before commencing the suit, and, reviewing authorities both American and English, holds it is not indispensable in suits in equity that the complainant offer to place the defendant *in statu quo* where it would not be inequitable to permit a rescission without such requirement. In *Stewart* v. *Stone*, (N. Y.) 28 N. E. Rep. 595, the court holds that one who attempts to rescind a transaction on the ground of fraud is not required to restore that which in any event he would be entitled to retain. The exception, in equitable proceedings, to the general rule has been recognized by this court in *Wenegar* v. *Bollenbach*, 180 Ill. 222, and *Harris* v. *Dumont*, 207 id. 583.

The case of *Rigdon* v. *Walcott*, 141 Ill. 649, is typical of the cases in this court relied upon by appellant. Therein it was contended the bill brought the case within that class of cases wherein a tender was not required before suit brought, for the reason that the court could, by its decree, place the defendant *in statu quo*. The bill sought to rescind and cancel an agreement in consideration of which complainant had been paid $40,000 in cash. The court said the case made by the bill was not one where the defendant could be placed *in statu quo* by the decree; that the relief sought did not necessarily involve a money decree in complainant's favor, out of which the consideration paid him could be deducted and thus satisfied. In the case at bar the facts alleged in the bill, if sustained by the proof, would entitle appellee to a money decree in a much larger sum than he had received from appellant, and the court could by its decree, if the relief prayed was granted, as fully protect appellant as if he had been offered the return of the $500 before the bill was filed. Appellee, both by his bill and in his testimony, agreed and consented that the $500, and in-

terest thereon, be deducted from the amount he might be entitled to have decreed him as the value of his interest in the home farm and the Iowa farm, and this the court did by its decree.

It is also insisted that the allegations in the bill as to fraud and misrepresentations are not supported by the evidence and that the decree is contrary to the weight of the testimony. What was said between appellant and appellee at the time the deeds were executed, and what representations were then made by appellant, is testified to only by appellant and appellee, and their testimony is in hopeless conflict. It was simply a question as to which one of them should be believed. The master believed appellee, and we are unable to say that he was not warranted in doing so. There is no controversy about the proposition that as a part of the consideration for the deed appellant agreed to assume and pay the liabilities of appellee and his former wife to the estate. There is a conflict in the testimony of appellant and appellee as to the amount of the indebtedness of appellee and Edna Taylor to the estate. Appellant testified the indebtedness was $3800 more than appellee claimed and testified the amount was. This $3800 was made up by a $2000 note to the First National Bank of Galva, signed by appellee and his father, (appellee's name appearing first on the note,) the $1500 recognizance paid by appellee's father, and $300 of smaller items. Among the notes of appellee held by his father was a note for $3800, dated February 1, 1898, which was the day appellee left for the west. He testified that $3800 note covered the $2000 to the Galva bank, the $1500 recognizance and $300 additional, the consideration for the $3800 note being that appellee's father would pay the recognizance, the $2000 note and satisfy additional indebtedness of $300. Appellee testified appellant represented to him that his former wife had materially increased his indebtedness after he had left the State by borrowing from his father, so the indebtedness at

that time amounted to about $23,000, that the lands of their father had depreciated in value since appellee left the State, and that the estate was not worth over $40,000 and had liabilities of about $20,000. Appellant denied making any such representations.

The master found that the indebtedness of appellee and Edna Taylor to the estate amounted, principal and interest, to $12,751.81 on the third day of December, 1903, and that judgment had been taken by appellant, as administrator, for said indebtedness. The master further found that the personal estate of John H. Taylor was worth at that time $12,751.81, and deducting the widow's share of one-third would leave $2125.30 as the share of the personal estate appellee was entitled to, which, credited upon his and his wife's indebtedness, would leave a balance due the estate of $10,626.51, which sum, together with the $500, was the full consideration agreed to be paid by appellant for the conveyances. The master found the total value of all the lands of the estate to be $72,400. He found the rents collected by appellant for six years, less expenses of collection, amounted, with interest, to $22,082.06, and deducting the value of the widow's dower from the land and her interest in the rents, (one-third,) appellee's interest in the lands, rents collected and the personal estate left by his father amounted to $21,205.22. This was $7954.42 more than his and Edna Taylor's indebtedness to the estate plus the $500 cash received. The court by its decree approved and confirmed these findings of the master, and also approved and confirmed the finding and conclusion of the master that the deeds were obtained by appellant by false and fraudulent representations as to the value of John H. Taylor's estate and the liability of appellee and Edna Taylor thereto.

It is earnestly insisted by appellant that the value of the Illinois lands as found by the master and decreed by the court is higher than is warranted by the proof, and complaint is made that the highest value testified to by any

witness was adopted in fixing the value of the home farm. Two witnesses for appellee testified the home farm was worth $140 per acre, two that it was worth $137.50 and one that it was worth $137. Two witnesses testified for appellant that the home farm was worth $105 per acre and one that it was worth $100 per acre. The master found the value to be $140 per acre. One witness who was engaged in the real estate business and who resided in Wethersfield and was acquainted with the Wethersfield lots, testified they were worth $2000 in 1903. Another witness on behalf of appellant who was a farmer but at the time of his testimony was employed as a motorman on a street car line, and who had been assessor of his township, placed the value of the Wethersfield property at $1150. The master fixed its value at $2000. As to all the rest of the lands the master fixed the value at a lower sum than was testified to by some of the witnesses of appellee and higher than was testified to by some of the witnesses of appellant. There is abundant proof to support the values fixed by the master, and the fact that some witnesses placed a lower value on the lands, or some of them, than the master did, or that averaging the values from the testimony of all the witnesses on both sides would produce a lower value than that found by the master, as contended for by appellant, would not justify or authorize a reversal of the decree on the ground that it was not supported by the evidence as to the value of the real estate.

In April, 1906, about one month before the original bill in this case was filed, appellant made a report to the county court as administrator of his father's estate, in which he represented he had paid out $192.82 more than he had received. In that report he stated the notes of Frank and Edna Taylor had been sued upon in the circuit court, judgment taken against Edna Taylor, who was personally served, and judgment in attachment taken against the interest of Frank J. Taylor in the lands of John H. Taylor, deceased.

This was more than two years after appellant had agreed to assume and pay said indebtedness. The amended bill, by way of supplement, alleged that since the commencement of the suit appellant had, as administrator of John H. Taylor's estate, brought two suits,—one in the circuit court of Rock Island county and one in the circuit court of Henry county,—upon notes of appellee to John H. Taylor, which were the same notes appellant agreed to pay, cancel and return to appellee at the time the conveyances were made. In this report of appellant as administrator, introduced in evidence, which was filed in February, 1908, he states that all the notes owing the estate, except those of Frank and Edna Taylor and two other persons, had been collected; "that the notes of said Frank Taylor are now in litigation and a suit pending to set aside a deed from said Frank Taylor to said administrator, and the notes of said Edna Taylor are not collectible, as said administrator verily believes; that steps were taken some years ago to collect the notes of said Frank Taylor by a sale of his interest in the lands of said decedent, but that the widow of said deceased objected so strongly that the proceedings were suspended, and that their collection is further interfered with by the suit above mentioned, in which said suit the said widow is a party complainant."

We deem it unnecessary to extend this opinion by a further reference to or comment upon the facts. Independently of the well known rule that where a person who occupies a trust or fiduciary relation deals with the property in his care to his own advantage, as where he claims to have acquired it by purchase from the beneficiary, the burden is upon him, when the transaction is attacked for fraud, to prove he acted in good faith and that the transaction was a just and equitable one and beneficial to the other party, we are unable to say, from a careful examination of the record, that the decree was not warranted by the facts.

It is further insisted by appellant that the rents accruing after the death of John H. Taylor were not part of the estate and did not pass by the assignment in the deed of "all interest in the estate of John H. Taylor, deceased," with full power to receive and receipt for the same. It is true, rents accruing after the death were not assets of the estate, but we think it clearly appears from the testimony and the acts and conduct of the parties that the language used in the deed was intended to, and the parties understood it did, assign appellee's rights and interests in said rents.

We find nothing in the record that would justify a reversal of the decree, and it is accordingly affirmed.

*Decree affirmed.*